NO. 07-08-0242-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JUNE 2, 2009

_____

KRISTY R. SIEFFERT, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE COUNTY COURT AT LAW NO. 2 OF LUBBOCK COUNTY;

NO. 2007-444,671; HONORABLE DRUE FARMER, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**OPINION**

Appellant, Kristy R. Sieffert, was convicted by a jury of the Class A Misdemeanor

offense of Failure to Identify[1] and sentenced to confinement in the Lubbock County Jail for

---

[1]*See* Tex. Penal Code Ann. § 38.02(b)(Vernon Supp. 2008). An offense under this subsection is a Class B Misdemeanor unless it is shown on the trial of the offense that the defendant was a fugitive from justice at the time of the offense, in which case the offense becomes a Class A Misdemeanor. *Id.* at § 38.02(d)(2). In this case, the State did allege that Appellant was a fugitive from justice at the time of the

365 days. Appellant's single issue on appeal is whether the trial court erred in denying her motion to suppress her statements made while being illegally detained. We reverse and remand.

## Background

At the suppression hearing, Officer Brady Lewis, Lubbock Police Department, testified that, on May 9, 2007, he observed a white SUV with four occupants driving slowly through a high crime area at approximately 12:45 a.m.[2] He followed the SUV until he paced its speed at forty miles per hour in a thirty-five mile per hour speed zone, at which point he stopped the SUV for speeding.[3]

As Officer Lewis approached the SUV, he had decided that his investigation would "go to something further" because the SUV had been in a high crime area and contained four occupants. When he approached the vehicle, Robert Stevens, the driver, had already retrieved his driver's license and proof of insurance. Officer Lewis testified this concerned

---

offense. As such the offense was punishable by confinement in the county jail for a term not to exceed one year, and by a fine of up to $4,000. *Id.* at § 12.21 (Vernon 2003).

[2]Officer Lewis characterized the area as a "high crime area" based on his personal knowledge. He indicated there were known drug houses in the area and prostitutes could be seen walking the streets.

[3]Officer Lewis testified that, when he pulled the SUV over, he "was interested in exactly what all was going on and why they were over there in that particular area." The Texas Court of Criminal Appeals has held that a pretext stop is valid so long as an actual violation occurs and law enforcement officials detain the person for that reason regardless of the officer's subjective reason for detention. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex.Crim.App. 1992).

2

him.[4] He also observed that the driver was "real nervous"–fidgeting around inside the SUV. After having Stevens exit the SUV, Officer Lewis conducted a pat-down for officer safety because he was "real nervous" and "they were coming from a high crime area, and a lot of prostitution and narcotics involves weapons." No weapons were located.

Officer Lewis then walked Stevens back to his patrol car, placed him in the backseat, and asked if there was anything he needed to know about in the SUV. Stevens responded, "No." The officer then asked him for consent to search the SUV and Stevens refused. At that moment, Officer Lewis "didn't know exactly what they were up to, but [he] knew something was out of the ordinary." Based upon these circumstances, Officer Lewis decided to detain Stevens and the other occupants while he called the K-9 Unit and requested a dog to search for drugs.

Officer Lewis testified that, at this point, Appellant had not given him any reason for suspicion. Nevertheless, he removed her and the other passengers from the SUV and then questioned each as to their activities, identities, and the SUV's contents. Appellant was questioned twice regarding her identity and she responded with incorrect information.

Approximately ten minutes later, a drug-sniffing canine arrived and alerted to the vehicle. Despite the alert, no drugs were found in the SUV following a search. While searching the SUV, however, Officer Lewis discovered Appellant's identification

---

[4]Officer Lewis also testified that it was his usual procedure to ask for a person's driver's license and proof of insurance "first off."

3

information. When he ran her name, he identified three outstanding warrants and placed her under arrest. No warning or traffic citation was issued to the driver. Appellant was charged with Failure to Identify, a Class A Misdemeanor and subsequently convicted following a jury trial. This appeal followed.

## Discussion

Appellant asserts the trial court erred by not suppressing her statements made while being illegally detained. She contends Officer Lewis improperly prolonged the traffic stop in order to initiate an investigation for drugs based upon less than articulable facts sufficient to support a reasonable suspicion warranting her continued detention.[5] The State asserts that Officer Lewis had reasonable suspicion to conduct an investigation for drug-related offenses because the SUV had been observed driving slowly through a high crime area and the driver was "extremely nervous" and "fidgeting around and reaching around [inside] the vehicle" after being stopped for speeding.

### I.    Standard of Review

A trial court's ruling on a motion to suppress is reviewed for abuse of discretion, *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002), under a bifurcated standard.

---

[5]Appellant does not challenge whether Officer Lewis's initial detention of the driver and the SUV's passengers for speeding was illegal. Thus, we need not decide under *Terry v. Ohio* whether the officer's action was justified at its inception. *Terry v. Ohio*, 392 U.S. 1, 20-21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This appeal is concerned with the second prong of the *Terry v. Ohio* analysis, *i.e.,* whether the search and seizure was reasonably related, in scope, to the circumstances that justified the stop in the first place. 392 U.S. at 28-29.

*Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). When a trial court's fact findings are based on an evaluation of witness credibility or demeanor, almost total deference is given to its factual determinations supported by the record. *St. George v. State*, 237 S.W.3d 720, 725 (Tex.Crim.App. 2007). However, on questions of mixed law and fact that do not turn on the trial court's evaluation of witness credibility and demeanor, we conduct a *de novo* review. *Amador*, 221 S.W.3d at 673.

When, as here, no findings of fact were requested nor filed, we review the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *See State v. Ross*, 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000). Whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion is a legal question that we review *de novo*. *See Madden v. State*, 242 S.W.3d 504, 517 (Tex.Crim.App. 2007); *Lopez v. State,* 223 S.W.3d 408, 415 (Tex.App.–Amarillo 2006, no pet.).

## II.     Traffic Stops

For Fourth Amendment purposes, a traffic stop is a seizure and must be reasonable. *Davis v. State*, 947 S.W.2d 240, 243, 245 (Tex.Crim.App. 1997). Both the driver and any passengers are considered seized within the meaning of the Fourth Amendment and may challenge the legality of the stop and the length and scope of their detention. *Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 2406-07, 168 L.Ed.2d 132 (2007).

A traffic stop is reasonable if the police officer was justified in making the stop and his actions during the stop were confined in length and scope to that necessary to fulfill the purpose of the stop. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex.Crim.App. 2004). Actions an officer may take within the scope of investigation attendant to a traffic stop include requesting identification, proof of insurance, and vehicle registration; checking outstanding warrants; confirmation of vehicle registration; and asking about the purpose of the trip and intended destination. *Id.*; *Strauss v. State*, 121 S.W.3d 486, 491 (Tex.App.–Amarillo 2003, pet. ref'd). An officer may approach not only the driver but passengers for this information. *Duff v. State*, 546 S.W.2d 283, 286 (Tex.Crim.App. 1977). However, "[a]bsent reasonable suspicion, officers may conduct only consensual questioning of passengers in a vehicle." *St. George*, 237 S.W.3d at 726 (citing *Florida v. Bostick*, 501 U.S. 429, 435, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).[6]

Although no rigid time limitation exists on its length, a traffic stop is temporary and may last no longer than necessary to effectuate its purpose. *Kothe*, 152 S.W.3d at 63-64, 65 n.43. Once its purpose has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Davis*, 947 S.W.2d at 243 (quoting *Ohio v. Robinette*, 519 U.S. 33, 41, 117 S.Ct. 417, 422, 136 L.Ed.2d 347 (1996)(Ginsberg, J., concurring)).

---

[6]The officer may also ask the driver and passengers to step out of the car. *Maryland v. Wilson*, 519 U.S. 408, 410, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997); *Strauss*, 121 S.W.3d at 491. In addition, a protective search for weapons is authorized when, under the totality of the circumstances at the time, an officer can conclude on some objective, reasonable basis that his safety is endangered. *Terry*, 392 U.S. at 27. *See Arizona v. Gant*, No. 07-542, 2009 WL 1045962, *7-8 (U.S. April 21, 2009).

After an officer has validly stopped a vehicle for a traffic offense, the officer may conduct a brief investigative detention, or "*Terry* stop," of the occupants of the vehicle when he has a reasonable suspicion to believe that the occupant is involved in criminal activity. The reasonableness of the temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which, taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *See Balentine,* 71 S.W.3d at 768. If during a valid traffic stop the officer develops reasonable suspicion that the detainees are engaged in other criminal activity,[7] prolonged or continued detention is justified. *Davis*, 947 S.W.2d at 244. See *Haas v. State*, 172 S.W.3d 42, 52 (Tex.App.–Waco 2005, pet. ref'd); *Perales v. State*, 117 S.W.3d 434, 439 (Tex.App.–Corpus Christi 2003, pet. ref'd); *McQuarters v. State*, 58 S.W.3d 250, 256 (Tex.App.–Fort Worth 2001, pet. ref'd).

In *Robinette,* the U.S. Supreme Court held that a continued detention and request to search a detainee's vehicle following a traffic stop was reasonable, *where consent was given*, even though no circumstances were noted that would have constituted reasonable suspicion of other criminal activity. *See Robinette,* 117 S.Ct. at 420-21. By contrast, in *Davis,* the Court of Criminal Appeals found the officers' conduct unreasonable where

---

[7]The basis for the reasonable suspicion justifying prolonged detention may be additional facts and information discovered by an officer during the lawful detention for the traffic stop. *See Rao v. State*, 577 S.W.2d 709, 711 (Tex.Crim.App. 1979); *Powell v. State*, 5 S.W.3d 369, 378-79 (Tex.App.–Texarkana 1999, pet. ref'd), *cert. denied*, 529 U.S. 1116, 120 S.Ct. 1976, 146 L.Ed.2d 805 (2000).

officers nevertheless detained the vehicle, and thus its occupants, after the detainee *refused* to consent to a search of his car, and sufficient time to effectuate the purpose of the original detention had elapsed. *See Davis,* 947 S.W.2d at 246. We interpret *Davis* and *Robinette* to mean that an officer may request consent to search a vehicle after a traffic stop but may not detain the vehicle or its occupants if such consent is refused *unless* reasonable suspicion of some criminal activity exists. In other words, if a valid traffic stop evolves into an investigative detention of other criminal activity (such as possession of a controlled substance) so that a canine sniff can take place, reasonable suspicion is required to prolong the detention and refusal to consent to search does not, in and of itself, establish that requirement. *Green v. State,* 256 S.W.3d 456, 462 (Tex.App.–Waco 2008, no pet.) (collected cases cited therein); *McQuarters*, 58 S.W.3d at 256 (olfactory inspection by police dog trained to detect the odor of illegal drugs requires a reasonable suspicion that the vehicle contains narcotics).

The burden is on the State to elicit testimony showing sufficient facts to create a reasonable suspicion. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim.App. 2001).[8] In our determination of whether reasonable suspicion existed for prolonging this traffic stop, we give due weight not to the officer's inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences that he was entitled to draw from the facts in light of

---

[8]While Appellant originally bore the burden of proof at the suppression hearing, the State stipulated that Appellant's arrest was warrantless. The burden then shifted to the State to establish that the seizure was conducted pursuant to a warrant or was reasonable. *Bishop v. State*, 85 S.W.3d 819, 822 (Tex.Crim.App. 2002).

his experience. *See Davis*, 947 S.W.2d at 242. Any investigative detention that is not based on reasonable suspicion is unreasonable and violates the Fourth Amendment. *Id.*

### III. Continued Detention

Appellant asserts that Officer Lewis's drug investigation was not justified by the traffic stop for speeding and her prolonged detention was illegal because the officer lacked any reasonable suspicion that she, or anyone else in the SUV, was engaged in any illegal activity when he initiated the drug investigation. She contends the SUV being slowly driven through a high crime area late at night and the driver's nervousness after having been stopped by the police for speeding were insufficient to create reasonable suspicion to justify prolonged detention for an unrelated drug investigation. As a result, she asserts that all her statements made to Officer Lewis after he radioed for the drug-sniffing canine and removed her from the SUV were inadmissible because her detention was illegal.

Although the time of day and the level of criminal activity in an area may be factors to consider in determining reasonable suspicion, they are not suspicious in and of themselves; *Hudson v. State*, 247 S.W.3d 780, 786-87 (Tex.App.–Amarillo 2008, no pet.); *Green,* 256 S.W.3d at 462, and that detainees were seen or found in a high crime area alone does not warrant reasonable suspicion. *Gurrola v. State*, 877 S.W.2d 300, 303 (Tex.Crim.App. 1997); *Amorella v. State*, 554 S.W.2d 700, 701 (Tex.Crim.App. 1977). Neither does driving slower than the posted speed; *Viveros v. State*, 828 S.W.2d 2, 3 (Tex.Crim.App. 1992); *Shaffer v. State*, 562 S.W.2d 853, 854-55 (Tex.Crim.App. 1978),

9

nor nervousness; *Green*, 256 S.W.3d at 462; *LeBlanc v. State*, 138 S.W.3d 603, 608 n.6 (Tex.App.–Houston [14th Dist.] 2004, no pet.), by themselves, warrant reasonable suspicion.

Officer Lewis testified at the hearing that when he stopped the SUV for speeding he had already decided the traffic stop would evolve into something more because the SUV was coming from a high crime area. Significantly, however, he did not observe any activity prior to the stop that would indicate that the SUV's occupants might have engaged in any illegal activity such as stopping near a known drug house or drug-dealing location, leaving the SUV to interact with anyone, or engaging in any "hand-to-hand" activity with anyone in the neighborhood. In fact, despite the SUV's presence in the area, he did not witness any of the SUV's occupants engage in any activity other than driving slowly.

Officer Lewis also testified he believed he had reasonable suspicion to believe that the driver had engaged in illegal activity because the driver was nervous. A number of courts have observed that nervousness is of minimal probative value, given that many, if not most, individuals can become nervous or agitated when detained by police officers. *See Deschenes v. State*, 253 S.W.3d 374, 383 n.10 (Tex.App.–Amarillo 2008, pet. ref'd) (collected cases cited therein); *McQuarters*, 58 S.W.3d at 257-58 "(nervousness is a weak indicator of hidden narcotics").

That the combination of these two events resulted in less than reasonable suspicion is also evidenced by Officer Lewis's own testimony. Prior to calling the K-9 Unit, he was

10

unsure whether the SUV's occupants had engaged in any illegal activity. He testified that he "didn't know it was drugs. I mean, I just knew that something was out of the ordinary."[9] Nevertheless, he prolonged their detention to launch a new investigation into a possible drug-related offense and called the K-9 Unit. Thereafter, he proceeded to engage in a fishing expedition to determine whether there were drugs in the SUV–removed the passengers from the vehicle, and then questioned them as to their activities, identity, and the SUV's contents.

Officer Lewis's suspicion that "something was out of the ordinary" was nothing more than an inarticulate hunch or suspicion–insufficient for a temporary detention. *Talbert v. State*, 489 S.W.2d 309, 311 (Tex.Crim.App. 1973).[10] When he decided to conduct a drug

---

[9]There must be a reasonable suspicion by the officer that some unusual activity is or has occurred, that the detained person is connected with the activity and that *the unusual activity is related to the commission of a crime*. *Hoag v. State*, 728 S.W.2d 375, 380 (Tex.Crim.App. 1987). *See also Myers v. State*, S.W.3d 873, 882 (Tex.App.–Eastland 2006, pet. ref'd). Although driving slowly through a high crime area may create an inference that there was "something out of the ordinary" occurring, the missing link here is that Officer Lewis observed nothing before or during the traffic stop that would lead a reasonable person to believe that this "suspicious activity" was related to the commission of any crime. *See Viveros*, 828 S.W.2d at 3. This standard is an objective one, Officer Lewis's hunch is irrelevant. *Wilson v. State*, 132 S.W.3d 695, 698 (Tex.App.–Amarillo 2004, pet. ref'd) (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim.App. 2001)).

[10]With the exception of the driver's nervousness, Officer Lewis learned or observed nothing new during the stop that would reasonably lead to any heightened suspicion. *See, e.g., Davis,* 947 S.W.2d at 245-46 (no reasonable suspicion to detain when officers concluded out-of-state driver was not intoxicated but they also believed the driver was not on a business trip as represented); *White v. State,* 574 S.W.2d 546, 547 (Tex.Crim.App. 1978) (reasonable suspicion did not exist where vehicle observed driving aimlessly in mall parking lot even though there had been a rash of purse snatchings in the parking lot); *State v. Losoya,* 128 S.W.3d 413, 415 (Tex.App.-Austin 2004, pet. ref'd) (no reasonable suspicion when officers, acting on an anonymous tip of a "black male" involved in narcotics activity, observed a "black male" make a "hasty" departure from high crime area after observing the police); *Klare v. State*, 76 S.W.3d 68, 72, 77 (Tex.App.–Houston [14th Dist.] 2002, pet. ref'd) (no reasonable suspicion where pickup truck was observed parked behind a shopping center at 2:30 a.m., all the businesses were closed and the shopping center had been burglarized a number of times); *Davis v. State*, 61 S.W.3d 94, 98-99 (Tex.App.–Amarillo 2001, no pet.) (no reasonable suspicion where a group of people were gathered in a yard located in a neighborhood known

11

investigation and called for the drug-sniffing canine, the purpose and focus of the traffic stop was impermissibly altered because he lacked any specific articulable facts, which, when combined with rational inferences from those facts, would create a reasonable suspicion sufficient to continue the detention and prolong the traffic stop for purposes of conducting a drug investigation.

This is particularly so regarding Appellant. Officer Lewis testified he had no reason to suspect Appellant when she was removed from the SUV in preparation for the arrival of a drug-detecting dog and then repeatedly questioned. Detaining Appellant for further questioning pending the arrival of the drug-sniffing dog went beyond the scope of the stop and unreasonably prolonged her detention. *See St. George v. State*, 237 S.W.3d 720, 726 (Tex.Crim.App. 2007).

In *St. George*, a driver was stopped by police because he had an inoperative license plate light. *Id.* at 722. In response to the officers' request for identification, the driver produced his driver's license. The passenger responded that, although he had a driver's

---

for drug trafficking and defendant was observed walking to and from the group several times). *Cf. Amorella*, 554 S.W.2d at 701 (reasonable suspicion for stop when vehicle observed with its lights on and motor running in department store parking lot in high crime area at 1:30 a.m. with several individuals standing around an open trunk which was immediately closed and the car driven away when the police were spotted); *Lopez v. State,* 223 S.W.3d 408, 415 (Tex.App.–Amarillo 2006, no pet.) (reasonable suspicion existed for further detention of defendant stopped in high crime area when officer observed plastic baggie in crease of gas cap compartment); *Strauss*, 121 S.W.3d at 491-92 (prolonged detention of traffic stop reasonable where inconsistent answers by passenger and driver to questions about ownership of car and intended destination, large amount of detergent in car consistent with efforts to mask the smell of drugs, and smell of burnt marihuana created reasonable suspicion); *Freeman v. State*, 62 S.W.3d 883, 888 (Tex.App.–Texarkana 2001, pet. ref'd) (prolonged detention of traffic stop reasonable where inconsistent answers by passenger and driver to "basic questions," use of rental car, and smell of marihuana in car detected while officer talked to passenger sufficient for reasonable suspicion).

12

license, he did not have it with him and gave a false name and date of birth. The driver's license and warrant checks came back clear and the officers issued a warning. While one officer issued the warning, a second officer began questioning the passenger regarding his identity and learned his true name. Upon running the passenger's true name for a warrant check, the officers discovered the passenger had outstanding traffic warrants and arrested him. During a search incident to arrest, they discovered marihuana on his person. *Id.*

The Court of Criminal Appeals rejected the State's argument that the passenger's misidentification coupled with his nervousness amounted to reasonable suspicion for the passenger's detention once the purpose for the stop had been completed. 237 S.W.3d at 726. The *St. George* Court held that, when the warning was issued to the driver, the officers had no specific articulable facts to believe the passenger was involved in any criminal activity and, without separate reasonable suspicion, questioning the passenger regarding his identity and checking for warrants went beyond the scope of the traffic stop and unreasonably prolonged its duration*. Id.* (citing *Brown v. Texas*, 443 U.S. 47, 52-53, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)). The *St. George* Court stated, "[b]ecause the officers failed to show reasonable suspicion in this case, it was unreasonable for them to continue detaining Appellant long after the warning citation was issued." *Id.* at 727.

Here, when Officer Lewis stopped the SUV for speeding, as in *St. George*, the legal justification or purpose of the stop was to either warn or cite the driver for a traffic violation. Officer Lewis had no reasonable suspicion to conduct any other investigation based on his

13

hunch that "something was out of the ordinary." Neither the SUV driving slowly through a high crime area nor the driver's nervousness during the stop supported any more than an inference or suspicion, at best, that any criminal activity was afoot. When the driver refused Officer Lewis's request to search the SUV, he had learned nothing new that justified prolonging their detention. At that point, it was incumbent upon him to either issue a warning or citation to the driver for speeding. Initiating a drug-related investigation by calling for a drug-sniffing canine and then removing the passengers from the SUV, questioning them about their activities, identities, and the SUV's contents impermissibly prolonged their detention by exceeding the purpose of the traffic stop. That Officer Lewis did not formally issue a warning or citation is of no moment.[11] His testimony at the suppression hearing indicates that pulling the SUV over for a traffic violation was a pretext for finding out what the occupants were "up to," and his practice was to issue only a verbal

---

[11]The State attempts to distinguish *St. George* because, in *St. George*, the driver was cited while the passenger was questioned and incriminating statements were obtained. 237 S.W.3d at 726. The *St. George* Court indicated that the citation's issuance signaled the end of the traffic stop. *Id.* Here, Officer Lewis signaled the end of the traffic stop when he asked the driver whether he possessed any illegal contraband and then solicited his consent to search the SUV. Although this was a proper act, "[i]f consent is withheld, then further detention of either the individual or chattel [in the absence of reasonable suspicion] becomes improper." *Strauss*, 121 S.W.3d at 491. *See Haas*, 172 S.W.3d at 52. Thereafter, Officer Lewis abandoned the original purpose for the stop, a speeding violation, and impermissibly expanded its purpose and scope by prolonging the traffic stop for an improper purpose–a drug investigation for which he lacked reasonable suspicion. While, in *St. George*, the officers were unable to show reasonable suspicion to justify detaining the passenger after the citation was issued; *id.* at 726-27, here, Officer Lewis was unable to show reasonable suspicion to justify detaining the passenger after the citation *should have been issued*. Rather than continue to pursue the investigation attendant to the traffic stop, Officer Lewis chose to abandon that investigation and launch a new investigation in the hopes of finding evidence of some drug offense. *See Davis,* 947 S.W.2d at 245 ("the propriety of the detention is judged by whether police pursued a means of investigation which dispelled or confirmed their suspicions quickly and in a manner that did not exceed the scope of the detention"). We note, this is not a case where an officer sought to investigate *specific* suspected criminal activity prior to completing the traffic stop, this is a case where the officer sought to investigate a "hunch" or "suspicion" unduly prolonging an otherwise valid traffic stop. *Cf. Kothe*, 152 S.W.3d at 65-66.

warning if the speeding violation was for less than ten miles per hour in excess of the posted speed limit. Here, the SUV exceed the posted speed limit by only a few miles per hour and the driver ultimately received no warning or citation for speeding.

Because reasonable suspicion for the drug-related investigation was lacking in this case, it was unreasonable for Officer Lewis to continue detaining Appellant after he impermissibly altered the purpose of the stop, expanded its scope, and prolonged Appellant's detention longer than necessary to effectuate the traffic stop's original purpose. Accordingly, we find the trial court erred in denying Appellant's motion to suppress.

## IV.    Harm Analysis

Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of judgment. Tex. R. App. P. 44.2. Here, the trial court erred by denying Appellant's motion to suppress her statements made during the unreasonable, prolonged detention. The evidence was subsequently admitted at trial. An investigative detention that is not based on reasonable suspicion is unreasonable and offends the Fourth Amendment; *Davis*, 947 S.W.2d at 242, rendering any subsequently discovered evidence inadmissible as "fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). The error below was constitutional error and Rule 44.2(a) is applicable.

15

To determine whether prejudice occurred by the introduction of Appellant's statements at trial, we evaluate the entire record in a neutral, impartial, and even-handed manner, not in the light most favorable to the prosecution; *Alford v. State*, 22 S.W.3d 669, 673 (Tex.App.–Fort Worth 2000, pet. ref'd), and must reverse unless we determine beyond a reasonable doubt that error did not contribute to Appellant's conviction or punishment. *Id.* We consider the source and nature of the error, the extent it was emphasized by the State, its probable collateral implications, the weight a juror would probably place on the error, and whether declaring it harmless would be likely to encourage the State to repeat it with impunity. *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App. 1989). We do not focus on the propriety of the outcome, but calculate as much as possible the probable impact on the jury in light of the existence of other evidence. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex.Crim.App. 2000), *cert. denied*, 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001).

Here, Appellant was charged with the offense of failure to identify. Without her statements made during the unreasonable detention, there is nothing else in the record showing Appellant failed to identify herself during the traffic stop. After carefully reviewing the record and performing the required harm analysis under Rule 44.2(a), we are unable to determine beyond a reasonable doubt that the trial court's denial of Appellant's motion to suppress her statements did not contribute to her conviction or punishment. Accordingly, we sustain Appellant's single issue.

## Conclusion

The trial court's judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.


Patrick A. Pirtle
Justice


Publish.