

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-20-00061-CR

---

JOHN ANDREW HERNANDEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 286th District Court
Hockley County, Texas
Trial Court No. 17129237, Honorable Pat Phelan, Presiding

---

March 8, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, John Andrew Hernandez, appeals his conviction for possessing a controlled substance. The substance was discovered in the vehicle he drove after being stopped for a traffic infraction and consenting to its search. The legitimacy of the stop was first addressed in a hearing upon his motion to suppress evidence. The trial court denied the motion, which eventually resulted in his being tried and convicted by a jury. The issues before us concern the legitimacy of the stop, the allegedly prolonged nature of the detention, and the trial court's refusal to submit an article 38.23 instruction. We affirm.

*Issue One –Initial Stop*

Appellant initiates his appellate attack by questioning the validity of the initial stop. Allegedly, the record contains no evidence indicating that the state trooper who conducted the stop had probable cause to believe that a crime had occurred. We overrule the issue.

Law enforcement officers are justified in stopping a vehicle when an officer has reasonable suspicion to believe that a traffic violation occurred. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). Here, the trooper who conducted the stop testified that "[w]hile traveling eastbound [on a four-lane highway], I noticed a tan SUV in front of me and the vehicle was operating with an expired registration." That is, "[t]he tags, the license plates were expired." Thus, she "conducted a traffic stop" of the vehicle. It happened to be driven by appellant. No one questions that it is a traffic offense to operate a motor vehicle with an expired registration on the public highways of Texas. *See* TEX. TRANSP. CODE ANN. § 502.472 (West 2013) (stating that a person commits an offense by operating a motor vehicle that has not been registered). Thus, the record contains evidence illustrating that the trooper had reasonable suspicion to believe a traffic violation occurred, justifying the initial stop.

Appellant, however, argues that the video taken of the stop by the trooper's dash camera belies the trooper's assertion that she noticed appellant's vehicle had expired license tags before deciding to stop him. This is purportedly so because it illustrates that 1) appellant passed the trooper while travelling in the opposite direction; 2) of the four lanes on the highway they travelled, two inside lanes and a grass median separated appellant's vehicle from that of the trooper; 3) both appeared to be travelling with the flow of traffic as they passed each other; 4) the speed limit was 75 mph; and 5) mere seconds

(8 to 10) lapsed between the time appellant's vehicle can first be seen in the video and the trooper changes lanes, crosses the median, and gives chase.

Truly, the video leaves one in awe of the trooper's visual acuity and reaction prowess given the distance involved and very nominal time between appellant's car first coming in view and the trooper doing that needed to check the status of the "tags" or license plates of appellant's SUV and discover them to be expired. Yet, these attributes did not undergo testing by appellant. He did not ask her such things as 1) when she first saw appellant's license plates; 2) whether her vision allowed her to see the vehicle before its image was close enough to be captured on film; 3) how she fed the information seen into whatever mechanism/computer she used to determine the legitimacy of a vehicle's registration; 4) how quickly the mechanism/computer responds with the requisite information; or 5) when she engaged her emergency lights or otherwise signaled for appellant to stop. Nor was this information captured on the video. Answers to such questions may have gone far to discredit or contradict the trooper's testimony about seeing appellant's SUV travelling with expired tags and, consequently, deciding to conduct a traffic stop. But, they were not asked, which meant that the trial court, as fact-finder, was free to credit or believe her testimony for purposes of denying the motion to suppress.

It may be that indisputable physical evidence, such as a video, may supersede or nullify the value of an officer's personal testimony. S*ee, e.g.*, *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000) (wherein the Court of Criminal Appeals stated that it need not defer to the trial court's resolution of historical fact because its decision was not dependent upon evaluation of credibility and a video presented indisputable visual evidence contradicting essential portions of Williams's testimony). Yet, we do not

3

have that "indisputable" physical evidence but rather a video capturing only certain scenes of an unfolding event. At best, it is evidence which one could use to question the trooper's credibility; yet, it fails to establish that the trooper could not have determined appellant's registration had expired when she initiated the stop. So, it is not enough to allow us to ignore our obligation to generally defer to the trial court's resolution of credibility issues and historical fact, despite whatever skepticism we may have. *See Delafuente v. State*, 414 S.W.3d 173, 177 (Tex. Crim. App. 2013) (describing the bifurcated standard of review requiring appellate courts to give almost total deference to a trial judge's findings of historical fact and credibility determinations supported by the record).

*Issue Two – Prolonged Detention*

Next, appellant contends that suppression should have been granted because the initial detention was unduly prolonged. We overrule the issue.

Returning to *Lerma*, we note that a "traffic stop made for the purpose of investigating a traffic violation must be reasonably related to that purpose and may not be prolonged beyond the time to complete the tasks associated with the traffic stop." *Lerma*, 543 S.W.3d at 190. During that stop, though, the officer may request certain information from a driver, such as the driver's license, vehicle registration, and proof of insurance, and run a computer check on it. *Id.* So too may the officer ask drivers and passengers about matters unrelated to the purpose of the stop, so long as the questioning does not measurably extend the duration of the stop. *Id.* Among the questions that can be asked is one seeking consent to search. *Sieffert v. State*, 290 S.W.3d 478, 484 (Tex. App.—Amarillo 2009, no pet.). Yet, the stop may not last longer than necessary to effectuate the stop's purpose, *Lerma*, 543 S.W.3d at 193, unless, of course, the officer

4

encounters articulable facts providing justification to prolong the stop while resolving the purpose of the initial detention.

The dash camera video reveals that once the trooper stopped appellant, she informed him of the reason for doing so and invited him to sit in the patrol car. He acceded. While in the car and during the period in which she attempted to run a computer check on the information given by appellant, the trooper began asking if he had contraband. Such was permissible. *Hammons v. State*, No. 13-15-00419-CR, 2017 Tex. App. LEXIS 387, at *4–5 (Tex. App.—Corpus Christi Jan. 19, 2017, pet. ref'd) (mem. op., not designated for publication) (stating that once a traffic stop is completed, an officer may ask the occupants of the vehicle whether they possess contraband and may further request consent to search without having reasonable suspicion).[1] Upon his denial, she asked for and received consent to search. Such was permissible, as well. At that point, and because she was alone, she extended the detention to obtain assistance in the search from other law enforcement officials. None were immediately available. More importantly, appellant did not revoke his consent as they waited for another trooper to arrive. Rather, he told the trooper he thought he would be arrested and, when asked why, volunteered that he had cocaine in the vehicle.

The time that lapsed between the trooper initiating the stop and appellant's acquiescence to the search was slightly over six minutes, and she had yet to complete the initial computer check or issue a ticket. Within twelve minutes of initiating the stop, the officer was told by appellant that he had cocaine in the vehicle. This too occurred

---

[1] The purpose of the stop had yet to be completed at bar when the trooper questioned appellant about having contraband and soliciting consent to search. Yet, it follows that if a law enforcement officer can ask those very questions immediately after the purpose of the stop is completed, he may ask them before the purpose of the stop is completed.

while the two waited for another officer to arrive to assist in the search to which appellant consented and before she issued a traffic citation. Given these circumstances, we cannot say that the trial court abused its discretion in rejecting appellant's argument that the stop was unduly prolonged before appellant confessed to possessing drugs.

*Issue Three – Article 38.23 Instruction*

In his final issue, appellant contends that he was entitled to an instruction under article 38.23 of the Texas Code of Criminal Procedure. We overrule the issue.

The article provides:

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2018). Here, appellant contends that 1) the trooper admitted to becoming aware of the expired registration upon running the vehicle's license plates; 2) "there was a disputed fact issue concerning whether she [the trooper] gained . . . probable cause [to stop] *prior* to her initiating the traffic stop"; and 3) "[t]he jury should have been allowed to resolve this issue." So, the fact issue for purposes of the article 38.23 instruction concerned when and how the trooper gained probable cause, or when and how she became aware of the expired registration status. This generally comports with what he urged below.

There, he explained to the court that he was entitled to the instruction because:

> Specifically, Trooper Moroles testified that during direct examination that **she had pulled over [appellant] because she observed an infraction of the expired registration on . . . my client's vehicle**. On cross-examination she admitted that she never saw that. **What happened is she ran the license plate and based on the reading of what she got back on the license plate registration she pulled him over**

6

*for that reason.* And I believe that creates a factual dispute as to ***whether she had any probable cause to detain [appellant] from the beginning***, and that's my objection.

(Emphasis added). In other words, she allegedly contradicted herself by first saying she "***observed*** an infraction of the expired registration" but later admitted that she "pulled him over for" discovering the expired registration "***based on the reading of what she got back*** on the license plate registration." (Emphasis added). Indeed, her initial testimony consisted of stating that: "I observed a tan SUV operating with an ***expired registration tag*** and conducted a traffic stop on that vehicle." (Emphasis added). On cross-examination, she conceded that she did not see "this [registration] sticker in front of the car when [she was] behind the vehicle." Rather, she discovered the expired registration when she "ran the license plate on the vehicle and it came back on our mobile CAD as being expired." To that, we add the initial content of the dash camera video and the time that lapsed between appellant's vehicle becoming visible and the trooper's decision to u-turn across the divided highway and initiate the stop. That purportedly created the factual dispute about whether she had any probable cause to detain "from the beginning."

Yet, there is no evidence placing in dispute the fact that the vehicle's registration was expired, and appellant does not contend that such evidence appeared of record. The debate concerns when and how the trooper discovered that. Yet, how she discovered it (i.e., seeing an expired tag on the windshield versus reading the return from her computer) is unimportant if she nonetheless had the requisite information about the registration being expired before initiating the stop.

Indeed, if she had the information and no evidence contradicts that, then it really does not matter how she obtained it. And, appellant attempts to find a material issue of

7

fact in that by interjecting the video and its depiction of a nominal time lapse between the trooper first encountering appellant's vehicle and the initiating of the stop. Though that video depicts the lapse of a brief period, it does not affirmatively illustrate that the trooper could not have obtained the requisite information within the time span. It contains nothing suggesting that her visual acumen, her reaction time, and the speed of her computer were such as to prevent her from acquiring it. Indeed, the video was not focused on her or the computer but rather the unfolding scenes in front of the windshield. Nor does it depict when she first signaled appellant to stop. That could have occurred anywhere between 1) the point she made a u-turn to 2) her coming upon him as he attempted to turn left off the highway, which was about a minute.[2] And, we know of no authority barring a trooper from deciding to simply follow someone, even hastily, without reasonable suspicion or probable cause justifying that decision.

Nor does the record illustrate whether appellant was turning left off the highway for personal reasons or because the trooper had signaled for him to stop. That too we are left to guess at.

We note the foregoing because one is entitled to an article 38.23 instruction when 1) the evidence presented to the jury raises an issue of fact; 2) the evidence on that fact must be affirmatively contested; and 3) the contested factual issue is material to the lawfulness of the challenged conduct used to obtain the evidence. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). Again, the purported underlying material fact issue is when the trooper discovered the expired registration and, therefore, had basis to stop appellant; was that before or after she initiated the stop? And, irrespective of whether

---

[2] Not until the trooper is stopping behind appellant can the reflection of her emergency lights be seen on the rear of appellant's SUV.

8

she discovered it by looking at a tag on the windshield of the car as it passed or by running license plates, the manner is immaterial without evidence that neither mode could have been done before she directed appellant to stop. The video does not affirmatively illustrate that such knowledge could not have come by either mode. At best, it leaves one to wonder or speculate whether she could or could not have acquired the information through either mode within the period between first seeing appellant and ultimately signaling for him to stop. But, as we said in *Henry v. State,* No. 07-18-00179-CR, 2018 Tex. App. LEXIS 9659 (Tex. App.—Amarillo Nov. 27, 2018, pet. ref'd) (mem. op., not designated for publication), "[s]peculation . . . does not equal evidence affirmatively contesting the officer's testimony." *Id.* at *6.

Article 38.23 requires evidence affirmatively creating a dispute on a material issue of fact. We lack that here. Indeed, this is a case illustrating the importance of defense counsel asking not only questions but also the right ones to flesh out what actually happened. Those questions were not asked; nor was the missing information provided through other means. Consequently, appellant did not establish that the trial court had an obligation to submit the instruction on the purported fact issue involved, i.e., when the officer garnered the information about appellant's expired vehicle registration.

Accordingly, we affirm the judgment of the trial court.

Brian Quinn
Chief Justice

Do not publish.