

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00188-CR

---

ISAIAH MONTELONGO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. DC-2022-CR-0842, Honorable Douglas H. Freitag, Presiding

---

May 26, 2026

## MEMORANDUM OPINION

Before PARKER, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Isaiah Montelongo, appeals from a judgment convicting him of murder,[1] for which the jury assessed punishment at life in prison. He raises a single issue, challenging the trial court's denial of his motion to suppress statements made during questioning by officers in a patrol car at the scene and during a subsequent interview at the Lubbock Police Department. Concluding that Appellant was not in custody for

---

[1]Tex. Penal Code § 19.2(c).

purposes of *Miranda v. Arizona*, 384 U.S. 436 (1966), or Article 38.22 of the Texas Code of Criminal Procedure, and that any error would have been harmless in any event, we affirm.

## BACKGROUND

Officers responded to a report of shots fired at the home of Appellant's grandmother. Appellant lived in a travel trailer in the back yard, where his girlfriend had been staying. When officers arrived, Appellant was in the front yard holding the victim, who had been shot in the face. Paramedics transported her to a hospital, where she died shortly after arrival.

After securing the scene, an officer asked Appellant to sit in a patrol car and inquired what had happened. Appellant was not handcuffed or otherwise physically restrained. He remained in the car for approximately two hours while officers worked the scene, with officers returning periodically to speak with him. Detective Bonds then asked Appellant if he would come to the station, and Appellant agreed.

At the station, Appellant met with Detectives Thomas Bonds and Joshua Franco in Bonds's office. Because Appellant was covered in blood, the detectives photographed him to preserve evidence. Detective Franco then escorted Appellant to a bathroom, where he cleaned up, and Appellant was then returned to the office. Appellant sat in an office chair across from Bonds's desk. He was not handcuffed or otherwise restrained. The door was not locked, and Appellant was periodically left alone in the room with the door open. Detective Bonds testified that Appellant was free to leave at any time and that

2

he would have been permitted to do so had he asked. Appellant was provided water, a cigarette, restroom breaks, and a portable heater.

Appellant told the detectives he had been in his trailer listening to music when he heard the victim screaming his name. He said that when he stepped outside, an African American man was standing in front of her and shot her in front of his door before running off. He told the detectives that the victim then walked toward him, that he picked her up and carried her to his bed, ran to his grandmother's house for a phone to call 911, returned and carried her outside, and ultimately moved her to the front yard, where he made the call.

While Appellant was at the station, crime-scene investigators processed the trailer and surrounding area. They observed extensive bloodstaining, including pooling, gushing, flow, and spatter on Appellant's bed, spatter on the interior door frame, drips on the steps, and additional spatter, drips, transfer, and pooling outside. On the bed, they found a bullet that had punctured Appellant's pillowcase, with hair matching the victim's adhering to it. They also recovered multiple shell casings, at least one live round, and a loaded magazine, but no firearm. Officers canvassed the neighborhood and obtained surveillance video covering the driveway of Appellant's house. The video showed no person fleeing in the direction Appellant described. This information was relayed to the detectives during the interview.

Early in the interview, and on multiple occasions thereafter, Appellant asked to speak with an attorney; the detectives continued questioning without honoring those

requests. Officers testified that they did so because they did not believe Appellant was in custody.

Approximately four hours into the interview, the detectives confronted Appellant with the discrepancies between his account and the developing evidence. Appellant continued to engage in the conversation and posed questions of his own to the detectives. After approximately six hours, the detectives obtained a warrant for Appellant's arrest and arrested him at the station.

After the warrant was executed, Appellant was taken to processing, where he made two phone calls home. In one of those calls, recordings of which were admitted at trial, Appellant referred to the neighbor who had supplied the driveway surveillance video and stated that the neighbor had "fu*ked me."

The trial court denied Appellant's motion to suppress, and portions of the interview were admitted at trial over his objection. The jury convicted him of murder and assessed punishment at life in prison.

**ANALYSIS**

A. Standard of Review and Applicable Law

We review a ruling on a motion to suppress under a bifurcated standard, affording almost total deference to the trial court's assessment of the circumstances surrounding the questioning, and reviewing de novo the ultimate legal determination of custody. *Wexler v. State*, 625 S.W.3d 162, 166 (Tex. Crim. App. 2021). When the trial court makes no findings of fact, we view the evidence in the light most favorable to its ruling and

4

assume the court made implicit findings supported by the record. *Id.* (citing *Herrera v. State*, 241 S.W.3d 520, 527 (Tex. Crim. App. 2007)).

The requirements of *Miranda* and Article 38.22 apply only to custodial interrogation. *Wexler*, 625 S.W.3d at 167; *see Miranda*, 384 U.S. at 479; TEX. CODE CRIM. PROC. art. 38.22. A person is in custody when, under the totality of the circumstances, a reasonable innocent person would believe his freedom of movement was restrained to the degree associated with a formal arrest. *Wexler*, 625 S.W.3d at 167–68 (citing *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996)).

The Court of Criminal Appeals has identified four general situations that may amount to custody:

> (1) the suspect is physically deprived of his freedom of action in a significant way;
>
> (2) a law enforcement officer tells the suspect he cannot leave;
>
> (3) law enforcement officers create a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted; or
>
> (4) probable cause to arrest exists and the officer's knowledge of that probable cause is manifested to the suspect.

*Wexler*, 625 S.W.3d at 167–68 (citing *Dowthitt*, 931 S.W.2d at 255). The restriction described in the first three situations must rise to the level associated with arrest, as opposed to an investigative detention. *Id*. For the fourth, subjective intent to arrest is irrelevant; the officer's knowledge of probable cause must be conveyed to the suspect. *Id*. (citing *Stansbury v. California*, 511 U.S. 318, 324–25 (1994)).

5

B. Whether Appellant was in Custody

In his sole issue, Appellant contends that the trial court erred in denying his motion to suppress the statements he made during the stationhouse interview. He argues that he was in custody because he had been confined in the back of a locked patrol car for approximately two hours and because, during the subsequent six-hour stationhouse interview, the detectives ignored his repeated requests to speak with an attorney and never administered *Miranda* warnings. He therefore asks that his statements be suppressed, and his conviction reversed. We disagree.

1. The Patrol Car Detention

We hold that Appellant's time in the patrol car at the crime scene did not amount to a custodial arrest. An investigative detention permits restriction of movement. *Wexler*, 625 S.W.3d at 167. No officer used physical force, applied handcuffs, threatened Appellant, displayed a firearm, or addressed him in a hostile manner. Appellant was found at the scene of a homicide as a witness, and a reasonable innocent person in his position would not have believed he was under formal arrest. The duration of the detention, by itself, does not convert an on-scene investigative encounter into a custodial arrest. *Id.*

2. The Stationhouse Interview

Further, when considering the four factors discussed in *Wexler* and *Dowthitt*, we hold the evidence does not support a finding that Appellant was in custody during the stationhouse interview.

6

First, Appellant was not physically deprived of his freedom of action in any significant way. He was not handcuffed at any point. The door to Detective Bonds's office was unlocked, was periodically left open, and Appellant was at times left alone in the room. He was given water, a cigarette, restroom access, and a portable heater. No badge or keycard was required to exit the building. These conditions do not reflect the significant physical restraint associated with formal arrest. *See Estrada v. State*, 313 S.W.3d 274, 295 (Tex. Crim. App. 2010) (lengthy stationhouse interview not custodial where suspect was unrestrained).

Second, no officer told Appellant that he could not leave. Detective Bonds testified that Appellant was advised he was free to leave and that he would have been permitted to do so had he asked. The officer who transported Appellant to the station offered contrary testimony that he would not have permitted Appellant to exit the patrol car. The record does not reflect, however, that the transporting officer communicated any restraint to Appellant. An officer's uncommunicated subjective intent is not part of the custody analysis. *Stansbury v. California*, 511 U.S. 318, 323 (1994); *Dowthitt*, 931 S.W.2d at 254. Because nothing in the record shows that Appellant was told he could not leave, the second factor is not satisfied.

Third, the objective circumstances would not have led a reasonable person to believe his freedom of movement was restricted to the degree associated with arrest. The unlocked and intermittently open office door, the explicit advisement that he was free to leave, the amenities provided, and the periods Appellant spent alone in the room all undercut any inference of arrest-level restraint. That the interview was lengthy and took

7

place at a police station does not, without more, transform a non-custodial encounter into custody. *Dowthitt*, 931 S.W.2d at 255; *Estrada*, 313 S.W.3d at 295.

Fourth, probable cause to arrest was not manifested to Appellant before he made the challenged statements. Detective Bonds testified that Appellant was not considered a suspect until approximately four hours into the interview. The detectives did not obtain or execute an arrest warrant until questioning concluded. Even assuming probable cause developed during the interview, nothing in the record shows that it was communicated to Appellant in a manner that would have caused a reasonable person to believe he was under arrest. *Wexler*, 625 S.W.3d at 167–68; *Stansbury*, 511 U.S. at 324–25.

Appellant's contention that the detectives ignored his references to counsel does not change the analysis. The protections afforded by *Miranda* and Article 38.22, including the right to terminate questioning upon a request for counsel, attach only when interrogation is custodial. Because Appellant was not in custody, the detectives were under no obligation to administer warnings or to discontinue questioning in response to his statements about an attorney.

C. Assuming Custody, Whether Admission of Appellant's Statements was Harmful

Assuming, without deciding, that Appellant was in custody during the stationhouse interview and that the trial court therefore erred in admitting his statements to Detectives Bonds and Franco, we conclude beyond a reasonable doubt that the error did not contribute to the conviction. *See* Tex. R. App. P. 44.2(a); *Sieffert v. State*, 290 S.W.3d 478, 488 (Tex. App.—Amarillo 2009, no pet.).

8

To determine whether prejudice resulted from the admission of a defendant's statements, we evaluate the entire record in a neutral, impartial, and even-handed manner, not in the light most favorable to the prosecution. *Alford v. State,* 22 S.W.3d 669, 673 (Tex. App.—Fort Worth 2000, pet. ref'd). Reversal is not required if the record establishes beyond a reasonable doubt that the error did not contribute to Appellant's conviction or punishment. *Sieffert v. State*, 290 S.W.3d 478, 488 (Tex. App.—Amarillo 2009, no pet.). Relevant considerations include the source and nature of any error, the extent the State emphasized it, its probable collateral implications, the weight a juror would likely place on it, and whether a finding of harmlessness would encourage repetition. *Id*.

The interview statements at issue did not include a confession. Detective Bonds acknowledged that Appellant never admitted to shooting the victim. At most, the statements consisted of Appellant's evolving account of the events leading to the victim's death, an account contradicted by substantial independent evidence properly before the jury. Appellant identifies no harm in the jury hearing this testimony.

The physical evidence and Appellant's own actions and statements at the scene, independent of the stationhouse interview, overwhelmingly established his guilt. When officers arrived, Appellant was covered in the victim's blood, placing him at the scene. Crime-scene investigators documented extensive bloodstaining inside the trailer, including pooling, gushing, flow, and spatter patterns on Appellant's bed, the interior door frame, the steps, and outside the residence. A bullet that had passed through the victim was recovered from Appellant's own pillow, with strands of the victim's hair adhering to it. Multiple shell casings, a live round, and a loaded magazine were also found at the scene.

Appellant's own statements outside the interview further undermined the account he gave at the station. At the scene, he told officers that he had moved the victim's body more than once, carrying her into the trailer, placing her on his bed, and carrying her outside again, and that he had gone to his grandmother's house before calling 911. Surveillance video from a neighbor's driveway, covering the path Appellant described the alleged shooter taking, showed no person fleeing in that direction. Recordings of his post-arrest telephone calls, admitted without challenge on this appeal, captured his statement faulting the neighbor who had supplied the surveillance video.

Each operative fact established through Appellant's interview statements was independently established through evidence to which no objection was raised on this appeal. On this record, even assuming error, we conclude beyond a reasonable doubt that the admission of Appellant's interview statements did not contribute to his conviction or punishment.

## CONCLUSION

Having overruled Appellant's issue, we affirm the trial court's judgment.

Lawrence M. Doss
Justice

Do not publish.

10