**Opinion filed April 1, 2010**



## In The

# Eleventh Court of Appeals

_____

### No. 11-08-00161-CR

_____

### VICTOR LAMAR ROBERSON, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 39th District Court**

**Haskell County, Texas**

**Trial Court Cause No. 6006**

### O P I N I O N

The jury convicted Victor Lamar Roberson of engaging in organized criminal activity, assessed his punishment at seven and one-half years confinement, and fined him $7,500. We reverse and render a judgment of acquittal.

#### I.  *Background Facts*

Chief Deputy Sheriff Winston Stephens clocked a vehicle traveling at eighty-nine miles per hour in a seventy mile per hour zone. He pulled the vehicle over and asked the driver for her driver's license and for proof of insurance. She claimed that she did not have her license with her and,

instead, gave Deputy Stephens her name and date of birth.[1]  This name did not match any record on file with either the National Crime Information Center or the Texas Crime Information Center.  She then gave a second last name that also came back as "no record found."

There were two passengers in the vehicle.  Because the driver could not produce a valid license, Deputy Stephens asked the passengers if they had a valid Texas driver's license.  Both said yes and told him that they would have to get it out of the back of the vehicle.  The first passenger produced a license that appeared valid, but the picture, height, and weight did not match him.  Roberson was the second passenger and was sitting in the front seat.  He gave Deputy Stephens a Texas ID card and a paper license.  Deputy Stephens ran this license and was informed that it was invalid.  In fact, Roberson did have a valid license.  Deputy Stephens could not explain why his search came back invalid.

Deputy Stephens continued talking with the passengers in an effort to determine what was wrong.  He had written the driver a ticket, and as soon as he verified that one of the passengers had a valid driver's license, he originally intended to let them drive away.  Deputy Stephens did not smell any marihuana or see any suspicious behavior, but when the driver gave him two false names and neither passenger could produce a valid license, he became suspicious that there was some criminal activity in progress.  Deputy Stephens called for a canine officer and told everyone that he intended to let a drug dog walk around the vehicle.  If the drug dog alerted, he would search the vehicle.  If not, then everyone would be free to go.

The canine officer arrived six minutes later.  The drug dog alerted on the front passenger door, and in the subsequent search, Officer Donald Matthew Cunningham of the Haskell Police Department found a seed and marihuana stem.  Officer Cunningham also found on the floorboard, near where Roberson had been sitting, a CD case and a briefcase with the name "V. Roberson" on it.  A number of checks that were drawn on fictitious banks, several driver's licenses, and maps to retail stores in or near Abilene, San Angelo, Lubbock, and Amarillo were found in the briefcase.  Finally, Officer Cunningham found a billfold in the passenger door pouch with two driver's licenses and several credit cards issued to Carl Mackey.

---

[1]The record does not indicate whether she produced proof of insurance or to whom the vehicle belonged.

## II.  *Issues*

Roberson challenges his conviction with two issues.  First, he argues that the trial court erred when it did not grant his motion to suppress the evidence.  Second, he argues that the evidence is legally and factually insufficient to support his conviction.

## III. *Motion to Suppress*

Roberson alleges that the trial court erred when it refused to grant his motion to suppress because the evidence obtained by Deputy Stephens was the result of an illegal detention and search. We review a trial court's ruling on a motion to suppress for an abuse of discretion.  *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007).  We view the record in the light most favorable to the ruling, affording almost total deference to the trial court's ruling on express or implied determination of historical facts and its application of law-to-fact decisions that are supported by the record and turn on an evaluation of witness demeanor and credibility.  *Id*.  All other law-to-fact decisions are reviewed de novo, which includes a trial court's determination of reasonable suspicion and probable cause.  *See State v. Ross*, 32 S.W.3d 853 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997).  The trial court did not make explicit findings of fact.  Therefore, we view the evidence in the light most favorable to the trial court's ruling and assume that the court made implicit findings of fact supported by the record.  *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).

For Fourth Amendment purposes, a traffic stop is a seizure and must be reasonable. *Sieffert v. State*, 290 S.W.3d 478, 482 (Tex. App.—Amarillo 2009, no pet.).  The driver and any passengers are considered seized within the meaning of the Fourth Amendment; therefore, any may challenge the legality of the stop and the length and scope of their detention.  *Brendlin v. California*, 551 U.S. 249, 257 (2007).

A traffic stop is reasonable if the officer was justified in making the stop and his actions were confined in length and scope to that necessary to fulfill the purpose of the stop. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004).  Roberson concedes that Deputy Stephens was justified in stopping their vehicle.  He challenges, instead, the length and scope of the stop.  Roberson argues that his continued detention was illegal because Deputy Stephens had neither probable cause nor reasonable suspicion of criminal activity.

3

Because Deputy Stephens was authorized to stop the vehicle, he was also authorized to request identification, proof of insurance, and vehicle registration; to check for any outstanding warrants; to confirm the vehicle's registration; and to ask about the purpose of the trip and intended destination. *Sieffert*, 290 S.W.3d at 483. This authority extended not only to the driver but to the passengers as well. *Duff v. State*, 546 S.W.2d 283, 286 (Tex. Crim. App. 1977). *But see St. George v. State*, 237 S.W.3d 720, 726 (Tex. Crim. App. 2007) (absent reasonable suspicion, officers may conduct only consensual questioning of the passengers in a vehicle). Deputy Stephens's authority is not, however, without its limits. A traffic stop is temporary and may last no longer than necessary to effectuate its purpose. *Kothe*, 152 S.W.3d at 63-64. Once this purpose has been satisfied, the stop may not be used as a fishing expedition for unrelated criminal activity. *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. Appp. 1997).

Roberson's position is based upon the premise that, because Deputy Stephens had written a ticket, the purpose for the initial traffic stop had been satisfied and, thus, that he was subjected to a continued detention. Roberson then argues that Deputy Stephens had no authority for this continued detention. Roberson's argument fails because the underlying assumption is inaccurate: the traffic stop's purpose had not been satisfied.

Roberson relies primarily upon *St. George*. In that case, officers issued the driver a warning ticket and then continued interrogating a passenger. The court held that the officers had no specific articulable facts to believe that the passenger was involved in any criminal activity and, without this, could not continue questioning him regarding his identity or to detain him to check for outstanding warrants. *St. George*, 237 S.W.3d at 726.

The distinction between that case and this one is that Deputy Stephens had not completed his initial investigation. The driver did not have a valid driver's license and twice gave him a false identification. Because Deputy Stephens was authorized to check for any outstanding warrants, the continued detention while he attempted to secure her identification was within the permissible scope of the initial stop. His decision to not let her drive away was not unreasonable. Likewise, his insistence on proof of a valid license before releasing the vehicle to either passenger was not unreasonable and was within the scope of the initial stop. Moreover, unlike *St. George*, there is no indication that Roberson's actions were nonconsensual. *Cf. id.* (passenger told officer "[t]he

4

problem is you're questioning someone who is not even driving a car and just sitting here and she got her ticket and there shouldn't be any other problem here").

Deputy Stephens's decision to request a canine officer was also authorized as part of his traffic stop investigation. He had been given two false names by the driver and a driver's license by a passenger that did not appear to belong to him, and Roberson produced a driver's license that was incorrectly reported as invalid. Deputy Stephens's conclusion that something inappropriate was in progress was not unreasonable, and he was, therefore, authorized to continue his investigation. *See Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd) (if an officer develops a reasonable suspicion that criminal activity is occurring during a valid traffic stop, a continued detention is justified).

Deputy Stephens testified that, when he was unable to secure a valid driver's license, he began to suspect that they were transporting drugs. Whether he then acted appropriately is judged by how diligently he pursued a means of investigation that was likely to dispel or confirm his suspicion quickly. *Perez v. State*, 818 S.W.2d 512, 517 (Tex. App.—Houston [1st Dist.] 1991, no writ). His conduct satisfies this test. The stop was not unnecessarily prolonged because the canine officer arrived within six minutes, and the use of a drug dog was an unobtrusive means of investigating his suspicion. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (the use of a well-trained, narcotics-detection dog during a lawful traffic stop generally does not implicate legitimate privacy interests).

The trial court did not abuse its discretion by finding that Deputy Stephens acted appropriately. Because his actions were authorized, the trial court did not err by denying the motion to suppress. Issue One is overruled.

#### IV. *Factual & Legal Sufficiency*

Roberson next asserts that the evidence is legally and factually insufficient to support his conviction for engaging in organized criminal activity. To determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979); *Jackson v. State*, 17 S.W.3d 664 (Tex. Crim. App. 2000). To determine if the evidence is factually sufficient, we must review all the evidence in a neutral light and determine whether the evidence supporting the verdict is so weak that

5

the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

A person engages in organized criminal activity if he commits or conspires to commit a felony offense with the intent to establish, maintain, or participate in either a combination or the profits of a combination. TEX. PENAL CODE ANN. § 71.02 (Vernon Supp. 2009). The State alleged that Roberson and the two other individuals in the car conspired to commit the offense of forgery and that the overt act of this conspiracy was possession of checks written on a fictitious account. The State's burden was to show more than the intent to commit forgery or to conspire to commit forgery; the State was required to prove Roberson's intent to establish, maintain, or participate in a *combination*. *Hart v. State*, 89 S.W.3d 61, 63 (Tex. Crim. App. 2002). Combination is defined as "three or more persons who collaborate in carrying on criminal activities." TEX. PENAL CODE ANN. § 1.01(a) (Vernon 2003).

Direct evidence of the intent to participate in a combination is not required. A jury may infer intent from any facts that tend to prove the combination's existence, including the alleged member's words, acts, and conduct and the method of committing the enumerated offense. *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Myers, J., concurring). It is permissible to infer an agreement among a group working on a common project when each person's action is consistent with realizing the common goal. *McGee v. State*, 909 S.W.2d 516, 518 (Tex. App.—Tyler 1995, pet. ref'd). But proof of a single ad hoc effort is insufficient. *See Smith v. State*, 36 S.W.3d 908, 910 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (evidence that defendant was involved in a one-time transaction is insufficient to establish an organized criminal activity). Instead, the combination must intend to engage in a continuing course of criminal activity. *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex. Crim. App. 1999).

The State argues that there was sufficient evidence of a combination because the three individuals possessed numerous forged checks and identifications and because the driver and the other passenger lied about their identities. Clearly, there was substantial evidence implicating Roberson of forgery. In the front of the vehicle where Roberson was sitting, the officers found a briefcase (with Roberson's name on it), a CD case, and a wallet with forged checks, driver's licenses,

credit cards, and maps and directions to more than 150 retail stores. There was some evidence connecting the other passenger (who was ultimately identified as Robert Lee Hall) to seized material. Hall gave Deputy Stephens a driver's license with the name Shawn Rowan. Several of the checks were made payable to Shawn Rowan. But there was no evidence connecting the driver to any of the checks, credit cards, or IDs. The driver's real name is Shawna Monique Baines. Initially, Baines told Deputy Stephens that her last name was Bennett. Later, she told him that her last name was Brooks. These names were not on any of the seized material. The officers found several checks made payable to Mary Lou Sheppard and identification for a Mary Lou Sheppard. They were found in the briefcase and CD case near Roberson, and there is no evidence that Baines ever used this name.

Equally clear is the fact that the State produced considerable evidence that all three individuals were engaged in criminal activity. Baines twice gave Deputy Stephens a false name even though she had no active warrants. Hall provided someone else's driver's license; and, as noted, Roberson possessed several forged items. But multiple criminal acts, without more, does not establish a combination engaged in organized criminal activity. *See Arredondo v. State*, 270 S.W.3d 676, 682 (Tex. App.—Eastland 2008, no pet.).

Furthermore, Section 71.01's legislative history makes clear that evidence of a conspiracy by three or more to commit a felony is insufficient to establish a combination. *Arredondo*, 270 S.W.3d at 682. Section 71.01 was originally drafted by the Senate with the current definition of combination except that it required five members rather than three. The House proposed defining combination as five or more people who engage in a criminal conspiracy as defined by TEX. PENAL CODE ANN. § 15.02(a), (b) (Vernon 2003). A conference committee rejected this definition in favor of the Senate version. *Id.* at 682-83. The Court of Criminal Appeals has held, therefore, that this requires proof of more than a three-person conspiracy but requires proof of a combination working together in a continuing course of criminal activities. *Nguyen¸* 1 S.W.3d at 697.

7

We recognize the practical problems the State faces because direct evidence of a combination may be unavailable. That is why an agreement may be inferred and why courts have found sufficient evidence based upon proof of coordinated action. *See, e.g, Dowdle v. State*, 11 S.W.3d 233, 236-37 (Tex. Crim. App. 2000) (combination was shown when multiple individuals participated in a well-planned burglary, met after the burglary to discuss further plans, combined separate loads of stolen property, and then traveled to another location to locate the stolen property and incriminating evidence); *Barber v. State*, 764 S.W.2d 232, 236-37 (Tex. Crim. App. 1988) (combination existed when the defendants obtained operating capital, leased property, purchased trucks, hired drivers, opened bank accounts, and made arrangements to sell stolen oil); *State v. Mauldin*, 63 S.W.3d 485, 489 (Tex. App.—Tyler 2001, pet. ref'd ) (agreement could be inferred from a coordinated interstate effort to deliver a large amount of cocaine over 1,500 miles); *Mayfield v. State*, 906 S.W.2d 46, 50-51 (Tex. App.—Tyler 1995, pet. ref'd) (combination was shown when the evidence indicated a well-orchestrated scheme involving multiple levels of dealers, transfers of drugs and cash between them, and a central source of supply).

While there was considerable evidence establishing Roberson's guilt of forgery and some evidence implicating Hall, there was no evidence connecting Baines to a combination working together in a continuing course of criminal activity. Section 71.01(a) requires proof of three or more persons to establish a combination. The evidence, therefore, is legally insufficient to support Roberson's conviction for engaging in organized criminal activity, and Issue Two is sustained.

## V. *Holding*

The judgment of the trial court is reversed, and judgment is rendered acquitting Roberson of the charged offense.

RICK STRANGE

JUSTICE

April 1, 2010

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

8