

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-11-00022-CR

CLAY BENTON                                                          APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

## FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

In a single point, Appellant Clay Benton appeals his conviction of possession of a controlled substance, less than one gram. We affirm.

### II. Factual and Procedural Background

Benton negotiated a plea bargain and entered a plea of guilty in exchange for six months' confinement in state jail after the trial court denied his motion to

---

[1]*See* Tex. R. App. P. 47.4.

suppress. In his motion to suppress, Benton argued that while he was a passenger in a vehicle, he was seized without any reasonable suspicion for the seizure "and/or without reasonable suspicion for further detention after the reason for the traffic stop was accomplished" and arrested without sufficient probable cause for the arrest.

Benton and Pilot Point Police Officer Reese Dunn testified at the hearing on the motion. Officer Dunn testified that on November 25, 2008, he initiated a traffic stop at approximately 9 p.m. after he saw a 2008 Chevrolet Tahoe travelling with defective tail lights on its trailer. He made contact with the car's owner and driver, Thomas Crane, and obtained identification from Crane and Benton, Crane's passenger, before returning to his squad car. While running a warrant check, he wrote out a warning for defective equipment. Officer Dunn's warrant check revealed that Benton had a warrant for his arrest, so he went back to Crane's vehicle, "finished up [his] business with the driver, and then [he] removed [Benton] from the vehicle."

When Officer Dunn removed Benton from the vehicle to arrest him for the warrant, he noticed two small baggies in plain view on the floorboard between the passenger seat and the passenger door as he placed Benton in handcuffs. The baggies contained a white crystal substance that Officer Dunn believed to be methamphetamine.[2] Officer Dunn stated, "The Defendant was arrested for the

---

[2]A field test confirmed that the baggies contained methamphetamine.

2

warrant and then I collected the evidence and charged him with possession." He agreed that he had probable cause to arrest Benton for possession of a controlled substance when he saw the two baggies containing the white powdery substance. Officer Dunn found another baggie and drug paraphernalia in the side pouch of a briefcase on the vehicle's rear floorboard; the briefcase belonged to Crane, the driver.

Benton said that he had been helping Crane with yard work at Crane's property located on Lake Ray Roberts until he started feeling sick and developed a migraine headache. He did not recall how much time elapsed between Officer Dunn requesting his identification and Officer Dunn informing him that he was arresting him for a warrant out of Collin County.

Benton said that after Officer Dunn arrested him, the officer came back to him with two baggies and said, "These are yours." Benton said that he replied, "No. I don't know what you're talking about." He testified that he had no clue what was going on and that the officer did not tell him where he found the baggies. Benton said that he did not see any baggies in his area of the car on the way to and from the lake that day and that the baggies were not his. Benton acknowledged that he knew what baggies of methamphetamine look like, stating, "I'm familiar with them, yes."

The State argued that the officer had probable cause to make the stop because of the defective equipment on the trailer, that the officer could arrest Benton based on the warrant, and that when the officer removed Benton from the

car, he saw the drugs within the immediate area between Benton and the passenger door, "[s]o, therefore, he had links as far as proximity to the drugs to make the arrest for—for this particular violation."

Defense counsel argued that the State could not validly prove there was probable cause to pull over the vehicle and reasonable suspicion to arrest Benton and later to charge him with possession of those narcotics because the car and briefcase belonged to Crane. The trial court denied Benton's motion. Benton then plea-bargained and signed a judicial confession to the offense. This appeal followed.

### III. Motion to Suppress

In his sole point, Benton argues that the officer lacked reasonable suspicion to request his identification and that the State failed to prove that he exercised control, management, or care over the two baggies of methamphetamine or that he knew that the contents were methamphetamine.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at

4

673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

## B.  Analysis

Benton first argues that Officer Dunn was not allowed to question Benton "regarding his identity without separate reasonable suspicion" and that doing so "went beyond the scope of the traffic stop."

The United States Supreme Court has held that a lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation and that the temporary seizure of driver and passengers ordinarily continues and remains reasonable for the duration of the stop. *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S. Ct. 781, 788 (2009). Further,

> [n]ormally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave. *An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop*.

*Id.*, 129 S. Ct. at 788 (citations omitted) (emphasis added). To make the traffic stop lawful, the police need not have, in addition to the vehicular violation, "cause

5

to believe any occupant of the vehicle is involved in criminal activity." *Id.* at 327, 129 S. Ct. at 784 (noting, however, that to justify a patdown of driver or passenger during the stop, police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous). Additionally, the Court has held that when a lawful detention is not prolonged by questioning, there is no additional seizure within the meaning of the Fourth Amendment. *Muehler v. Mena*, 544 U.S. 93, 101, 125 S. Ct. 1465, 1471–72 (2005) (stating that officers already lawfully detaining individual did not need reasonable suspicion to ask her for her name, date and place of birth, and immigration status when the questioning did not extend the time the individual was detained);[3] *Baldwin v. State*, 278 S.W.3d 367, 372 (Tex. Crim. App. 2009) (stating that an officer may ask a defendant to identify himself during a valid investigative detention but that he may not search a defendant's person to obtain or confirm his identity); *Overshown v. State*, 329 S.W.3d 201, 206 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that because asking vehicle's passenger for his name did not unreasonably extend the duration of the traffic stop, the statement was not obtained as a result of a Fourth Amendment violation and should not be suppressed); *Roberson v. State*, 311 S.W.3d 642, 646 (Tex. App.—Eastland

---

[3]In *Mena*, officers obtained a search warrant and detained Mena and several others in handcuffs during a search of the premises she and the others occupied. 544 U.S. at 95–96, 125 S. Ct. at 1468. During the detention, which the Court held was reasonable, the officers asked for each detainee's name, date of birth, place of birth, and immigration status. *Id.* at 96, 100–101, 125 S. Ct. at 1468, 1471.

2010, no pet.) (stating that when an officer is authorized to stop a vehicle, he also has authority to ask driver and passengers for identification and to check for outstanding warrants). *But cf. St. George v. State*, 237 S.W.3d 720, 726 (Tex. Crim. App. 2007) ("Absent reasonable suspicion, officers may conduct only consensual questioning of passengers in a vehicle.").

Here, Officer Dunn had a lawful reason—defective tail lights on Crane's trailer—to initiate the traffic stop. *See Johnson*, 555 U.S. at 327, 333, 129 S. Ct. at 784, 788 (stating that in a traffic-stop setting, a lawful investigatory stop occurs when it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation). Officer Dunn's request for identification from Benton could not have measurably extended the duration of the stop because he asked for Crane's identification at the same time, and he ran the warrant check on both men while writing out Crane's warning for defective equipment. Because the detention was lawful and the request for Benton's identification did not prolong the detention, we overrule this portion of Benton's sole point. *See Mena*, 544 U.S. at 101, 125 S. Ct. at 1471–72.

With regard to probable cause, in his written motion to suppress, Benton argued that "the Defendant was arrested without sufficient probable cause for the arrest." However, Officer Dunn testified that he arrested Benton for the outstanding warrant first, for which he had probable cause to make an arrest, before he charged Benton with possession. *See Haley v. State*, 480 S.W.2d 644, 645 (Tex. Crim. App. 1972) (stating that probable cause "clearly existed" for

arrest when warrant check revealed outstanding warrants); *Brooks v. State*, 76 S.W.3d 426, 434 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("[T]he fact that appellant had several outstanding warrants gave the officers probable cause to arrest him."). Further, when Officer Dunn viewed the drugs in plain view where Benton had been sitting, he also had probable cause to arrest Benton for possession of a controlled substance. *See, e.g., Tucker v. State*, 183 S.W.3d 501, 505, 509–11 (Tex. App.—Fort Worth 2005, no pet.) (applying "affirmative links" factors and concluding that the evidence was sufficient to support finding that back seat passenger possessed the drugs when he was the only person sitting in the back seat and the drugs were in plain view near where he had been seated for the entire car ride).

Finally, to the extent that Benton argues that the evidence is insufficient to affirmatively link him to the methamphetamine found where he had been sitting in the vehicle and sustain his conviction, a challenge to the sufficiency of the evidence to support a conviction is not the proper subject of an appeal from a denial of a motion to suppress evidence. *See Montoya v. State*, No. 02-03-00151-CR, 2004 WL 814957, at *1 (Tex. App.—Fort Worth Apr. 15, 2004, no pet.) (mem. op., not designated for publication) (citing *Avila v. State*, 884 S.W.2d 896, 897–98 (Tex. App.—San Antonio 1994, no pet.)); *see also* Tex. R. App. P 25.2(a)(2), (d). And by entering a guilty plea and making a written judicial confession, Benton admitted every element of the charged offense. *See Puente v. State*, 320 S.W.3d 352, 358 & n.23 (Tex. Crim. App. 2010) (stating, in a felony

case that "[a] written judicial confession provides *evidentiary* support for a plea of guilty to the charges alleged in the indictment."). We overrule Benton's sole point.

## IV. Conclusion

Having overruled Benton's sole point, we affirm the trial court's judgment.


BOB MCCOY
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MCCOY, JJ.

DAUPHINOT, J. concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 26, 2012