

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| ERNEST GREEN, | | No. 08-14-00131-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | County Criminal Court No. 1 |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20130C15209) |
| | § | |

**O P I N I O N**

Appellant Ernest Green pled guilty to a charge of Failure to Identify under TEX.PENAL CODE ANN. § 38.02 (West 2011) while preserving the right to challenge the trial court's denial of his motion to suppress. Finding no error in that ruling, we affirm.

**FACTUAL BACKGROUND**

Officers Scott Graves and Jesus Morales were on patrol together in the early morning hours of December 23, 2013. They both witnessed a pickup driving without an illuminated license plate. The officers followed the truck, dimmed their own headlights to make sure the pickup's license plate was not illuminated, and then initiated a traffic stop. Officer Morales engaged the driver of the pickup, while Officer Graves made contact with the passenger, who was later identified as Appellant. When two officers are patrolling in the same unit, Officer Graves will always approach any passengers to help insure the other officer's safety. Officer

Graves asked Appellant for his identification. Appellant said he had none as he forgot it. He did give his name as "Tyrone Green" and his date of birth as "the sixth month of the seventh day of 1960."

Both officers then huddled at the rear of the vehicle. Officer Morales had also been told by the driver that she had no identification. Officer Morales noticed the vehicle's VIN number was on a piece of paper taped to the front windshield. The number itself was incorrect, as it lacked the appropriate number of digits. From this, Officer Graves believed the vehicle might be stolen and the officers had both the driver and Appellant exist the vehicle. The driver then stated that she did not own the vehicle, but had borrowed it from an "older lady." Officer Graves asked for and obtained consent to search the vehicle.

The search turned up a wallet with three identification cards underneath the front bench seat. Each had the name "Ernest Tyrone Green" with a date of birth of May 7, 1960. The identification cards thus differed from what Appellant had told Officer Graves in that the month of his birth was different (May versus June) and Appellant had omitted disclosing his first name. Officer Graves confronted Appellant about the discrepancy in his name and date of birth and Appellant purportedly admitted that he had lied because he had outstanding warrants.[1] The officers then ran a warrants check revealing that Appellant indeed had outstanding traffic warrants and he was placed under arrest. The vehicle driver was also arrested on her own outstanding warrants. A further check showed the vehicle was not stolen.

Appellant was charged with failure to identify. Prior to trial, he moved to suppress any statements that he made, or physical evidence seized following his detention. His primary argument at the suppression hearing was that Officer Graves was not justified in initiating

---

[1] Appellant testified at the suppression hearing and denied he knew about any warrants or that he made this statement.

2

contact with him as he was merely a passenger in the vehicle. He also complained that the officers prolonged the stop. Both Appellant and the officers testified at the suppression hearing. No one testified to the total length of the stop, or how long any segment of the stop lasted. While the stop would have been captured on the police cruiser's dashcam videotape, it was not available at the hearing. Officer Graves believed that it may have been destroyed after a period of time. Appellant does not raise any specific error in relation to the failure to produce the video tape and we attach no significance to its absence.

The trial court overruled the motion to suppress. No written findings of fact or conclusions of law were requested or issued. The trial court ruled that Appellant lacked standing to raise any objection to the search of the vehicle, and Appellant does not address that as an issue on appeal. Accordingly the seizure of the physical evidence is not before us. With regard to Appellant's statements, the trial court ruled that: "Officers have the right, under case law, to approach any person in a car and ask for identification. He was lawfully detained."

Appellant pled guilty and was sentenced to 120 days. He reserved the right to appeal the trial court's ruling on the suppression motion.

## WAS THERE REASONABLE SUSPICION?

In his sole issue on appeal, Appellant complains that the officers lacked reasonable suspicion as required by the Fourth Amendment to detain him. We discern three threads to the contention. First, Appellant argues that because he was a passenger, his detention should be viewed as we would a pedestrian who might be randomly stopped by the police under the rubric of *Terry* v. *Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). As such, he contends the officers exceeded the scope of a legitimate *Terry* stop. Second, he complains that the stop was unduly prolonged, either as a traffic stop, or as an investigation of a possible auto theft. Finally,

3

Appellant notes that the officers claimed that the encounter was "consensual" (that is Appellant was not detained) until the moment of his arrest. If that were true, Appellant urges that he could not have violated Section 38.02 because it only prohibits a person from intentionally giving a false name or date of birth to a peace officer who has lawfully *detained* the person.

*Standard of Review*

The Fourth Amendment protects persons against unreasonable searches and seizures. *Terry,* 392 U.S. at 20. An investigatory stop is permissible if it is supported by reasonable suspicion. *Id.* As a general proposition under the Fourth Amendment, determinations of reasonable suspicion (and probable cause) are reviewed *de novo* on appeal. *Ornelas v. U.S.*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *Kothe v. State*, 152 S.W.3d 54, 62 (Tex.Crim.App. 2004). But because these issues arise in fact specific, and often fact disputed situations, we review a trial court's ruling on a motion to suppress using the bifurcated standard of review articulated in *Guzman v. State,* 955 S.W.2d 85 (Tex.Crim.App. 1997). *See Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); *Krug v. State,* 86 S.W.3d 764, 765 (Tex.App.--El Paso 2002, pet. ref'd).

Under that standard, the trial judge is the sole trier of fact regarding the credibility and weight to be given to a witness's testimony, and we do not engage in our own factual review of the trial court's decision. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000); *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). Almost total deference is given to the trial court's ruling on questions of historical fact and application of law to fact questions that turn on an evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 106 (Tex.Crim.App. 2006), *citing Guzman*, 955 S.W.2d at 89. But a trial court's rulings on mixed questions of law and fact that do not turn on the credibility and demeanor of witnesses are

4

reviewed *de novo. Id.* Questions of legal principles and the application of established facts to the law are also reviewed *de novo* by this Court. *Kothe*, 152 S.W.3d at 62-63.

When the trial court does not make findings of fact, as in this case, we presume factual findings that would support the trial court's ruling if the record and reasonable inferences could support the implied findings. *Ford v. State*, 158 S.W.3d 488, 493 (Tex.Crim.App. 2005); *Carmouche*, 10 S.W.3d at 327-28.

*Analysis*

Because Appellant was stopped without a warrant and without his consent, the State had the burden of proving the reasonableness of the stop. *See Castro v. State*, 227 S.W.3d 737, 741 (Tex.Crim.App. 2007); *Young v. State*, 133 S.W.3d 839, 841 (Tex.App.--El Paso 2004, no pet.). The driver and any passengers are considered seized within the meaning of the Fourth Amendment and both may challenge the legality of the stop and the length and scope of their detention. *Brendlin v. California,* 551 U.S. 249, 257, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007); *Roberson v. State*, 311 S.W.3d 642, 645 (Tex.App.--Eastland 2010, no pet.).

With regard to the stop itself, an officer may lawfully stop and detain a person for a traffic violation that the officer witnesses. *See Garcia v. State,* 827 S.W.2d 937, 944 (Tex.Crim.App. 1992); TEX.CODE CRIM.PROC.ANN. art. 14.01(b)(West 2015)("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."); TEX.TRANSP.CODE ANN. § 543.001 (West 2011)("Any peace officer may arrest without warrant a person found committing a violation of this subtitle."). The decision to stop an automobile is reasonable when an officer has reasonable suspicion to believe that a traffic violation has occurred. *Jaganathan v. Texas*, 479 S.W.3d 244, 247 (Tex.Crim.App. 2015); *Guerra v. State*, 432 S.W.3d 905, 911 (Tex.Crim.App. 2014).

5

With regard to the passenger, the two part test of *Terry v. Ohio* applies. *St. George v. State*, 237 S.W.3d 720, 725-26 (Tex.Crim.App. 2007)("Although *Terry* did not specifically consider passengers in a vehicle subjected to an investigative detention, the test outlined in *Terry* is sufficiently comprehensive to address this issue as well."). Under *Terry*, the officer's actions must be justified at inception and must be reasonably related in scope to the circumstances that justified the interference in the first place. *Terry,* 392 U.S. at 19-20, 88 S.Ct. 1868.

Having stopped a vehicle, the officers can detain the driver and occupants no longer than necessary to complete the purpose of that stop. *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983)("This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."); *Kothe*, 152 S.W.3d at 63. But a routine traffic stop can include the additional component of a license and warrants check. *Id*. Police officers may request certain information from a driver, such as a driver's license, insurance, and car registration, and may then conduct a computer check on that information. *Davis v. State*, 947 S.W.2d 240, 245 n.6 (Tex.Crim.App. 1997). "It is only after this computer check is completed, and the officer knows that this driver has a currently valid license, no outstanding warrants, and the car is not stolen, that the traffic-stop investigation is fully resolved." *Kothe*, 152 S.W.3d at 63-64.

This traffic stop morphed into a subsequent investigation of a potential auto theft. If during the course of a valid traffic stop the officer develops a reasonable suspicion that criminal activity is afoot, a continued detention is justified. *Zervos v. State,* 15 S.W.3d 146, 151 (Tex.App.--Texarkana 2000, pet. ref'd). But in order to justify detaining the driver beyond what is necessary to deal with the traffic violation, the officer must have "reasonable suspicion" -- the officer must have specific articulable facts, which, premised upon his experience and personal

6

knowledge and coupled with the logical inferences from those facts, would warrant the intrusion on the detainee. *Davis*, 947 S.W.2d at 244. These facts must amount to more than a mere hunch or suspicion. *Id.* Rather, they must objectively support a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, connected with the detainee, that is related to crime. *Id.* An investigative detention not based on reasonable suspicion is unreasonable and, thus, violates the Fourth Amendment. *Id.* at 243.

The permissible scope of the intrusion will vary to some extent with the particular facts and circumstances of each case. *Id.* at 243. The guiding principle is that an investigative detention must be temporary and last no longer than is necessary. *Id.* at 245. The police officer should employ the least intrusive and fastest investigative methods reasonably available to verify or dispel the officer's suspicion. *Id.* "This limitation means that once the reason for the stop has been satisfied, the stop may not be used as a 'fishing expedition for unrelated criminal activity.'" *Id.* at 243.

Applying these principles, we reject each of the three arguments advanced by Appellant. We note initially that he advances no claim that the vehicle was not lawfully stopped for violation of a traffic ordinance. Both officers testified that they saw the missing license plate light, which is a violation of the traffic code. *See* TEX.TRANSP.CODE ANN. § 547.322(f)(1) . The question here is what occurred after the stop.

Appellant urged below that during the stop he should not have been questioned at all because he was a mere passenger in the vehicle.[2] The State responds that in a traffic stop, a police officer may request identification and check for outstanding warrants from both driver and

---

[2] The State contends that this was the only argument made below and that some of Appellant's other arguments on appeal are new and thus waived. While acknowledging some imprecision between the fit of the arguments in the brief and as made below, we find shades and phases of the arguments in the record and choose not to reach the waiver issue.

passengers alike. Prevailing law, with a proviso we note below, supports that view.

Certainly during a routine traffic stop, an officer has the right to check the driver for outstanding warrants and request: (1) a driver's license; (2) insurance papers; and (3) identification. *Davis*, 947 S.W.2d at 245 n.6. A number of cases hold this authority applies not only to the driver, but to the passengers as well. *Duff v. State,* 546 S.W.2d 283, 286 (Tex.Crim.App. 1977); *Roberson v. State*, 311 S.W.3d 642, 646 (Tex.App.--Eastland 2010, no pet.); *Freeman v. State*, 62 S.W.3d 883, 888 (Tex.App.--Texarkana 2001, pet. ref'd).

We pause only to add some gloss to this rule. In *St. George v. State*, 237 S.W.3d 720 (Tex.Crim.App. 2007) the court wrote that "[a]bsent reasonable suspicion, officers may conduct only consensual questioning of passengers in a vehicle." *Id.* at 726. The *St. George* court characterized its earlier *Duff v. State* decision as making the same holding. *Id.* The Court of Criminal Appeals made this point again in *State v. Mazuca*, 375 S.W.3d 294, 309 (Tex.Crim.App. 2012) by noting that the police officer there "did not demand" that a passenger provide identification; "he merely asked for it." Likewise, here, Officer Graves testified that Appellant voluntarily provided his name and date of birth. If Appellant's argument was that Officer Graves impermissibly demanded that he produce identification (as opposed to merely requesting it) these cases might all come into play. But his complaint below was that he could not be approached at all, which is a proposition at odds with existing law.

Neither party here cites *St George*, which has several factual similarities to this case. As here, the deputies in *St. George* made a traffic stop based on an unilluminated license plate. *Id.* at 721-22. The driver provided her identifying information to the police. *Id.* at 722. When the passenger was asked for identification, he stated he had a driver's license but did not have it with him. *Id.* After prompting, he gave a name and date of birth. *Id.* When the police ran this

8

information through the computer, the driver's identify checked out and one of the deputies proceeded to write a warning ticket for the traffic violation. No records came back for the passenger and while one deputy gave the driver a warning, the other deputy continued to question the passenger. *Id.* From that questioning, the deputy obtained more information, which revealed that the passenger had provided an incorrect name. A further check with the actual name showed that he had outstanding traffic warrants. *Id.* While the passenger had at first volunteered in giving a name and date of birth, towards the end of the encounter he began objecting to the continued questioning, making the encounter non-consensual. *Id.* at 726. The passenger was arrested ten minutes after the warning citation was given to the driver. *Id.* at 722. When performing a search incident to arrest, the officer then found marijuana. *Id.*

The Court of Appeals in *St. George* found the passenger's initial answers giving a name and birthdate were in a consensual setting and not excludable. *St. George v. State*, 197 S.W.3d 806, 820, 824 (Tex.App.--Fort Worth 2006), *affirmed*, 237 S.W.3d 720 (Tex.Crim.App. 2007). The later statements, and the discovery of the marijuana, however, occurred after the detention took a non-consensual turn and the court suppressed those. *Id.* The Court of Criminal Appeals affirmed because the deputies lacked reasonable suspicion to continue the questioning of the passenger after the driver was given the warning citation. *Id.* at 726.

But *St. George* does not stand on all fours because here the traffic stop investigation (or the potential car theft investigation) did not conclude before the incriminating statements were made. That is, unlike *St. George* where the marijuana was discovered well after the traffic stop ended, Appellant's statements were made while the traffic investigation was still on-going.

We also reject Appellant's second argument that the traffic stop investigation was unduly prolonged. Once the officers made initial contact with the driver, they were entitled to question

9

her about the traffic offense, and also request her driver's license, identification, and insurance information. *Davis*, 947 S.W.2d at 245 n.6. This is all part of the second layer of a traffic stop which includes a check for outstanding warrants. The traffic stop is not fully resolved until those matters are complete. *Kothe*, 152 S.W.3d at 63-64. Officer Graves testified that the license and warrant check occurred *after* Appellant had already made the challenged statements and after the search turned up his wallet. Appellant developed no timeline that suggests the officers delayed the traffic stop investigation so as to make it a fishing expedition for unrelated criminal activity.

Moreover, the traffic stop was overlaid with a second investigation of the ownership of the vehicle. The VIN number for the truck was on a piece of paper taped to the windshield. Even at that, the number contained thirteen digits when an actual VIN numbers contains seventeen digits. The driver had no identification of her own, and only indicated that she borrowed the truck from some unnamed "older woman." Under these circumstances, the officers were objectively justified in making further inquiries to insure that the vehicle had not been stolen.

Appellant suggests that the traffic stop should have taken no more than two minutes. From this, he reasons that he was "held for an undisclosed amount of time that is longer than allowed or necessary presumably under the false pretense that the vehicle was stolen . . . ." We find no record support for either the claim that the initial traffic stop should have taken no more than two minutes, or that the theft investigation was a false pretense. The trial court's implied findings would be to the contrary and are supported by the testimony of the officers.

Appellant's last contention is that because he was never actually detained, he could not have violated Section 38.02 because it is premised on a person giving false information while under arrest or under lawful detention. TEX.PENAL CODE ANN. § 38.02(b)(2)("A person commits

10

an offense if he intentionally gives a false or fictitious name, residence address, or date of birth to a peace officer who has . . . lawfully detained the person."). The officers gave inconsistent answers as to whether Appellant was detained or not. The State's prosecutor argued that under either scenario, they had the right to ask for his identification.

While we may agree that the Section 38.02 creates a legal duty to provide a correct name, address and date of birth when one is lawfully detained, we think that this argument is directed to Appellant's guilt or innocence to the underlying charge, and not the issue in the suppression hearing. It would only be relevant to the suppression hearing if the officers were attempting to justify their continued detention of Appellant on an investigation of a failure to identify charge. *See St. George*, 237 S.W.3d at 727 (State's reliance on investigation of failure to identify as basis to detain passenger was misplaced when officers did not know of misidentification until well after traffic investigation concluded). Here, the State justifies the detention both on the initial traffic stop, and subsequent vehicle ownership question, and not the failure to identify charge.

Appellant chose to plead guilty to the charge, which admits the substantive allegations against him. Had he wished to challenge whether the State's case failed as a matter of law because there was legally insufficient evidence for an element of the offense, he could have proceeded to trial. Moreover, we note that Appellant's legal sufficiency challenge that he attempts to assert here has been twice rejected on the merits. *Overshown v. State*, 329 S.W.3d 201, 205 (Tex.App.--Houston [14th Dist.] 2010, no pet.)(mem. op.)(not designated for publication)(passenger was detained within meaning of statute when he first gave wrong name); *Waalee v. State*, 09-07-00245-CR, 2008 WL 5622656, at *4 (Tex.App.--Beaumont Feb. 11, 2009, no pet.)("Any rational trier of fact could have found the lawful detention element of the charged offense proven beyond a reasonable doubt."). For these reasons, we overrule Issue One

and affirm the conviction below.

April 22, 2016
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

12