COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ARKEITH J. DAVIS, | § | No. 08-15-00033-CR |
| Appellant, | § | Appeal from the |
| v. | § | |
| | § | Criminal District Court No. 1 |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| | § | |
| Appellee. | § | (TC#1360951D) |
| | § | |

## **O P I N I O N**

Appellant Arkeith J. Davis was indicted for possession of cocaine. Appellant filed a pretrial motion to suppress concerning a traffic stop in which Appellant was a passenger in the vehicle. The trial court denied the motion following hearing. Appellant then pleaded guilty, reserving the right to appeal the trial court's ruling on his motion to suppress, and was adjudicated guilty and sentenced to eleven years' incarceration.

On appeal, Appellant does not question the validity of the initial traffic stop, but contends the trial court erred in concluding the arresting officers had reasonable suspicion to detain him as a passenger and to "demand" that he provide identifying information. Appellant also contends the trial court abused its discretion when it allowed the State to reopen its case three weeks after the

initial hearing on his motion to suppress.[1]  We affirm.[2]

## BACKGROUND

On February 25, 2014, Fort Worth police officers John Lucas and W. Martin were patrolling Fort Worth's east side, when two undercover narcotics officers asked for their assistance in an investigation concerning Appellant.  The narcotics officers gave the officers a description of Appellant and the clothing he was wearing, and informed them that Appellant had been seen getting into a vehicle and that the driver had subsequently failed to properly signal a turn.  As Officers Lucas and Martin were following the vehicle, Officer Lucas noticed the car had a paper tag.  When he ran the tag number through the system, it came up invalid.  The officers pulled the vehicle over.  Officer Martin approached the driver, while Officer Lucas approached the passenger.  Appellant was the passenger.  Officer Lucas acknowledged that up to that point, Appellant had done nothing wrong and was just sitting in the vehicle.

Appellant provided Officer Lucas with his name and date of birth,[3] which Officer Lucas used to contact the police information center and "run him for outstanding warrants."  Officer Lucas was advised that Appellant had an outstanding local warrant out of the City of Fort Worth.  After receiving confirmation that the warrant was valid, Officer Lucas asked Appellant to step out of the vehicle and placed him in handcuffs and under arrest for the outstanding warrant.

"Out of the blue," Appellant then informed Officer Lucas that he needed to talk and that he had something in his front pocket.  When Officer Lucas searched Appellant's front pocket he

---

[1]  Appellant raised the same two issues in a single brief filed in cause numbers 08-15-00030-CR, 08-15-00031-CR, 08-15-00032-CR, 08-15-00033-CR, and 08-15-00034-CR.

[2]  This case was transferred from our sister court in Fort Worth, and we decide it in accordance with the precedent of that Court to the extent required by TEX. R. APP. P. 41.3.

[3]  Officer Lucas could not recall if Appellant handed him some form of identification "or whether he did it verbally and I wrote it down."

found a bag containing what he suspected was heroin, cocaine, and marijuana. He also found "a large quantity of assorted bills" in Appellant's front pockets and in a wallet in Appellant's back pocket. At that point, Officer Lucas put Appellant under arrest for possession. The officers did not arrest or ticket the driver or take the paper tag off the vehicle, but rather ultimately allowed the driver to drive away from the scene in the vehicle.

The initial hearing on Appellant's motion to suppress was held on May 29, 2014. At the conclusion of the evidence that day, both parties rested and closed, and argued their respective positions. The trial court indicated it would take the matter under advisement and that court would reconvene on June 12 "for purposes of the Court's ruling[.]" A few days later, the State filed a motion to reopen the evidence to submit additional evidence that Appellant had an outstanding warrant at the time of the traffic stop, which Appellant opposed. Court reconvened on June 20, and the trial court granted the State's motion to reopen, and over objection, allowed the State to place into evidence a certified copy of the outstanding traffic citation on which the warrant for Appellant's arrest had been issued.

The trial court made written findings of fact and concluded that the officers had reasonable suspicion to make the traffic stop, that Officer Lucas had reasonable suspicion to detain Appellant in order to obtain his identification, and that Officer Lucas had probable cause to arrest Appellant on the outstanding warrant and probable cause to search Appellant's pocket due to Appellant's statement that he had something in his front pocket and because the search was incident to Appellant's arrest on the outstanding warrant.

## DISCUSSION

### Detaining a Passenger and Obtaining Identification

3

In his first issue, Appellant does not question the validity of the initial traffic stop, stating that "even though the motive of the officers was nefarious and pre-textual, they clearly had the authority to stop a vehicle which had committed even a minor traffic violation within their view." *See Garcia v. State,* 827 S.W.2d 937, 944 (Tex.Crim.App. 1992) (an officer may lawfully stop and detain a person for a traffic violation the officer witnesses); *see also Jaganathan v. Texas*, 479 S.W.3d 244, 247 (Tex.Crim.App. 2015) (the decision to stop an automobile is reasonable when an officer has reasonable suspicion to believe that a traffic violation has occurred); *Guerra v. State*, 432 S.W.3d 905, 911 (Tex.Crim.App. 2014) (same). Appellant contends, however, that despite having reasonable suspicion to make the traffic stop, the officers did not have reasonable suspicion to detain him as a passenger and to require him to provide identifying information.

### *Standard of Review*

We review a trial court's ruling on a motion to suppress under an abuse of discretion standard and will disturb the lower court's ruling only if it falls "outside the zone of reasonable disagreement." *Martinez v. State,* 348 S.W.3d 919, 922 (Tex.Crim.App. 2011); *State v. Dixon,* 206 S.W.3d 587, 590 (Tex.Crim.App. 2006). We afford almost total deference to the trial judge's determination of historical facts—if supported by the record. *Wade v. State*, 422 S.W.3d 661, 666 (Tex.Crim.App. 2013); *State v. Woodard,* 341 S.W.3d 404, 410 (Tex.Crim.App. 2011) (citing *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997)). We view the evidence in the light most favorable to the ruling. *Wade*, 422 S.W.3d at 666; *Woodard,* 341 S.W.3d at 410 (citing *State v. Garcia–Cantu,* 253 S.W.3d 236, 241 (Tex.Crim.App. 2008)). The prevailing party is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it. *Wade*, 422 S.W.3d at 666-67; *Woodard,* 341 S.W.3d at 410. We review *de novo* the trial

judge's application of the law to the facts. *Wade*, 422 S.W.3d at 667; *Valtierra v. State,* 310 S.W.3d 442, 447 (Tex.Crim.App. 2010). We will uphold the trial judge's ruling if it is reasonably grounded in the record and correct on any theory of law applicable to the case. *Wade*, 422 S.W.3d at 667; *Valtierra,* 310 S.W.3d at 447–48.

### *Analysis*

It is well-settled that when a police officer makes a traffic stop, not only is the driver of the vehicle seized within the meaning of the Fourth Amendment, but also any passenger is seized as well, and consequently the passenger may challenge the constitutionality of the stop. *Brendlin v. California*, 551 U.S. 249, 251, 127 S.Ct. 2400, 2403, 168 L.Ed.2d 132 (2007). Appellant concedes that the officers had the right to make the initial traffic stop, but argues they (i) did not have the right to detain him as "a mere passenger who was not observed violating the law," (ii) did not have the right to "demand that he provide identification," and (iii) that "the detention was so overly long as to be unreasonable[.]"[4]

In making these arguments, Appellant relies primarily on the Court of Criminal Appeals decision in *St. George v. State*, 237 S.W.3d 720 (Tex.Crim.App. 2007), which was also a passenger case in which the validity of the initial traffic stop was not in question. We find Appellant's reliance is misplaced.

First, the Court in *St. George* never addressed the officers' right to detain the passenger along with the driver during the traffic stop. The only issue in *St. George* was whether the officers' questioning of the appellant violated the Fourth Amendment. *See id*. at 726. And, after

---

[4] Under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a court must first decide whether the officer's action was justified at its inception. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex.Crim.App. 2004). Because Appellant concedes the initial stop was justified, we focus on the second factor in *Terry*—whether the search and seizure was reasonably related in scope to the circumstances that justified the stop in the first place. *Id.*

*St. George* was issued, the United States Supreme Court made clear that following a lawful roadside stop, the police may lawfully detain both the driver and all passengers "pending inquiry into a vehicular violation," and that the seizure of the driver and the passengers is reasonable and ordinarily remains reasonable for the duration of the stop. *Arizona v. Johnson*, 555 U.S. 323, 327, 333, 129 S.Ct. 781, 784, 788, 172 L.Ed.2d 694 (2009). Thus, in the present case, the officers had the right to detain Appellant for the duration of the traffic stop, without any particular reasonable suspicion that Appellant himself had committed an offense.

Second, *St. George* made clear that police officers may question a passenger after a legal stop, as long as it is consensual. *See St. George*, 237 S.W.3d at 726 ("Absent reasonable suspicion, officers may conduct only consensual questioning of passengers in a vehicle."). While Appellant states in his brief that Officer Lucas had no right to "demand" he provide identification and that he was subject to "continued, non-consensual questioning," the record fails to show that Appellant's interaction with Officer Lucas was anything but consensual. The trial court found that Appellant was "asked" for his identification and that Appellant "provided Officer Lucas his identification information[.]" Officer Lucas testified that Appellant provided him with his name and date of birth, which Officer Lucas used to contact the police information center to "run him for outstanding warrants." There was no evidence that Officer Lucas "demanded" Appellant's identification, or even asked for that information more than once, as asserted by Appellant. In fact, in his cross examination of Officer Lucas, defense counsel characterized that Officer Lucas had "asked for his I.D[.]" We conclude the record was sufficient to enable the trial court to reasonably infer that Appellant provided his name and date of birth to Officer Lucas voluntarily.

We note that in *St. George*, the validity of the officer's initial request for the passenger's

6

identification was not in question.[5] The only inquiries called into question were the officers' subsequent inquiries after the passenger had voluntarily given the officers his alleged name and date of birth, they had run that information, and there was no record of a driver's license matching that name and date of birth. *Id*. at 722, 723 n.2. After the officers had already issued a warning ticket to the driver, the officers continued to question appellant, and ultimately determined his true name. *Id*. at 722. It was this subsequent questioning that was determined to be non-consensual because the officers requested appellant's "name and date of birth multiple times and repeatedly told him that this has to be resolved before he could leave[,]" and because Appellant explicitly protested. *Id*. at 726. After appellant finally revealed his real name, the officers ran that name, found that appellant had outstanding warrants, arrested him on the outstanding warrants, and then discovered marijuana in their search incident to arrest. *Id*. at 722. It was within this context that the Court of Criminal Appeals addressed whether the officers' "continued questioning" was unrelated to the justification for the stop and whether, without reasonable suspicion that appellant was engaged in criminal activity, his "continued detention and investigation" was illegal. *Id*. at 726. The Court ultimately concluded that the "continued detention was unreasonable, based on its non-consensual nature and the fact that the deputies lacked reasonable suspicion to continue questioning Appellant once the initial reason for the traffic stop ended[.]" *Id*. at 727.

Here, the record supports that when Appellant was asked for his identification, he provided it willingly. Thus, unlike in *St. George* where the officers obtained the appellant's true name and his warrant information only by continuing to question the appellant despite his protests, Officer Lucas properly obtained Appellant's identifying information in a consensual manner and thus

---

[5] The court of appeals had held that the first identification was consensual because the appellant had voluntarily answered the officer's question. *Id*. at 723 n.2.

properly used that information to determine Appellant's warrant status.

Third, unlike in *St. George* where the evidence showed that the officers continued to question appellant once the initial reason for the traffic stop had ended, there is no evidence in the present case to show that Appellant's detention was so overly long as to be unreasonable.

In *Johnson*, the United States Supreme Court held that following a lawful roadside stop, the seizure of the driver and passengers ordinarily remains reasonable for the duration of the stop, which ends when the police have no further need to control the scene and inform the driver and passengers that they are free to leave. *Johnson*, 555 U.S. at 333, 129 S.Ct. at 788. The Court specifically stated: "An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Id.* (citing *Muehler v. Mena*, 544 U.S. 93, 100-01, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005)). Similarly, in *State v. Mazuca*, 375 S.W.3d 294, 309-10 (Tex.Crim.App. 2012), the Court of Criminal Appeals recognized that there would be no Fourth Amendment violation when:

> [The officer] did not demand that the appellee, a passenger in the car, supply identification; he merely asked for it. Once the appellee assented to provide that information, [the officer] immediately conducted a check for warrants, as he was entitled to do during a routine traffic stop, so long as that warrant check does not extend the legitimate duration of the traffic stop beyond the scope of its original justification. [Citations omitted].

In a routine traffic stop, police officers may request certain information from a driver, such as a driver's license and car registration, and may conduct a computer check on that information; the traffic stop is fully resolved only after the computer check is completed, and the officer knows that the driver has a currently valid license, no outstanding warrants, and the car is not stolen. *Kothe v. State*, 152 S.W.3d 54, 63-64 (Tex.Crim.App. 2004). While there was no specific

8

timeline developed in the evidence in the present case, there was sufficient evidence from which the trial court could reasonably infer that Officer Lucas had obtained Appellant's information and determined Appellant was subject to an outstanding warrant well before the officers had completed their check of the driver and the driver was allowed to leave the scene. As such, the trial court could have reasonably concluded that Appellant's detention was not so unduly long as to be unreasonable. *See Overshown v. State*, 329 S.W.3d 201, 206 (Tex.App. – Houston [14th Dist.] 2010, no pet.) (passenger's statement properly obtained before traffic stop completed); *Roberson v. State*, 311 S.W.3d 642, 646 (Tex.App. – Eastland 2010, no pet.) (passenger's detention was permissible where officer had not yet completed his initial investigation). Issue One is overruled.

### Allowing the State to Reopen

At the May 29 hearing on Appellant's motion to suppress, the State placed into evidence a copy of the outstanding arrest warrant to support Officer Lucas' testimony that when he ran Appellant's identifying information for outstanding warrants, he was advised that Appellant had one valid, outstanding local warrant from the City of Fort Worth. The warrant had been issued by the municipal court of the City of Fort Worth to arrest Appellant for the misdemeanor traffic offense of failing to wear a seat belt. In closing that day, Appellant's counsel argued that the State had failed to show there was "an affidavit to support such an arrest warrant." At the subsequent June 20 hearing, the State offered into evidence, and the trial court admitted, a certified copy of the actual traffic ticket underlying the arrest warrant.

In his second issue, Appellant contends the trial court abused its discretion when it allowed the State to reopen its case three weeks after the initial hearing on his motion to suppress. Appellant acknowledges that the trial court "has admittedly broad discretion" in allowing a party

9

to reopen, but cites to Article 36.02 of the Texas Code of Criminal Procedure and claims that the trial court had no discretion to allow the State to reopen after the parties closed and argued the motion to suppress on May 29, or at least abused its discretion by granting the State's motion to reopen without requiring it to show that the evidence was necessary to the due administration of justice.[6]

We agree with the State that this issue is controlled by the Court of Criminal Appeals' decision in *Black v. State*, 362 S.W.3d 626 (Tex.Crim.App. 2012), and the case discussed approvingly therein—*Montalvo v. State*, 846 S.W.2d 133 (Tex.App. – Austin 1993, no pet.). These cases recognize that a pretrial motion to suppress evidence is nothing more than a specialized objection to the admissibility of that evidence. *Black*, 362 S.W.3d at 633; *Montalvo*, 846 S.W.2d at 137. Accordingly, a ruling on a motion to suppress is interlocutory in nature, which a trial court can reconsider and revise in its discretion at any time. *Black*, 362 S.W.3d at 633; *Montalvo*, 846 S.W.2d at 138. To the extent Article 36.02 circumscribes a trial court's authority to reopen a hearing on a motion to suppress, it restricts the court's discretion only to the extent it prohibits further evidence of any kind, that is, once the parties have concluded their arguments at the trial itself. *Black*, 362 S.W.3d at 634. Therefore, even mid-trial, a trial court has the discretionary authority to reopen a hearing on a motion to suppress to allow the State to present additional evidence in support of the trial court's interlocutory ruling to deny the motion. *Id*. at 635.

In *Montalvo*, the court of appeals concluded that because the trial court was presented with a State's motion indicating that the evidence had been lawfully obtained, and because the decision

---

[6] Article 36.02 provides that the "court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." TEX. CODE CRIM. PROC. ANN. art. 36.02 (West 2007).

to reconsider did not result in a purposeful delay, the trial court did not abuse its discretion in allowing the State to reopen during trial. *Montalvo*, 846 S.W.2d at 138. Certainly, when as here the trial court has not yet made any decision on the motion to suppress and grants the motion to reopen in a pretrial proceeding and not at trial, the trial court's decision falls well within its discretion. Likewise, the record shows that the State moved to reopen in order to present evidence to further support its position that at the time of the traffic stop, a valid warrant for Appellant's arrest was outstanding—evidence that supported Officer Lucas' testimony that he had been so advised. Further, the record contains no evidence showing that the trial court's decision to allow the State to reopen resulted in any purposeful delay. Accordingly, we conclude the trial court did not abuse its discretion in granting the State's motion to reopen and in allowing the State to submit the additional evidence. Issue Two is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

STEVEN L. HUGHES, Justice

August 3, 2016

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

11